Louis Goldstein, as Administrator, etc., of Ben Goldstein, Deceased, Appellant, Respondent, *v.* New York Life Insurance Company, Respondent, Appellant, Impleaded with Joseph Lefkowitz, Defendant.*

First Department, April 19, 1929.

* Modifying 133 Misc. 106.

*Copal Mintz* of counsel [*William Lurie*, attorney], for the plaintiff.

*Ferdinand H. Pease* of counsel [*Louis H. Cooke*, attorney], for the defendant New York Life Insurance Company.

MERRELL, J. The action is brought by plaintiff as administrator of the goods, chattels and credits of Ben Goldstein, deceased, to recover of the defendant New York Life Insurance Company the sum of $30,000 upon seven policies of life insurance issued by defendant upon the life of plaintiff's intestate. In plaintiff's complaint he alleges the issuance by the defendant, appellant, of the seven policies of life insurance, all payable to the defendant Lefkowitz as sole beneficiary. Two causes of action are stated in the complaint as to each policy. Under the terms of the several policies as originally issued the death benefit was payable to the estate of the insured, each policy being subsequently changed after its issuance so that the death benefit became payable to the defendant Lefkowitz. As to each of the seven policies the first cause of action is alleged only against the defendant, appellant, New York Life Insurance Company, while the second cause of action on each policy is alleged as against the defendant insurance company and the defendant Lefkowitz, who finally became sole beneficiary under the policies. In the first cause of action as to each policy the plaintiff alleges a claim, as administrator, upon the policy, notwithstanding an allegation that the agreement of the New York Life Insurance Company was to pay the personal representatives of the assured or the duly designated beneficiary. The complaint contains no allegation negativing the claim of

assignment or designation of other beneficiary, or to explain why the policy sued on reads in favor of the defendant Lefkowitz as beneficiary. In the second cause of action as to each policy the complaint alleges the change of beneficiary whereby the defendant Lefkowitz was named to receive the death benefits and alleges that the change was produced by fraud, undue influence and with fraudulent intent, and that the defendant Lefkowitz, with premeditation, procured the murder of the insured and was thereafter convicted therefor, and that, therefore, the purported change of beneficiary was never valid, or if valid, that Lefkowitz by his acts had forfeited his rights under the policy, and that the policy thereby became payable to the plaintiff. Plaintiff asks judgment for the face of the policies and also that Lefkowitz be declared to have no rights under the policies and directing surrender thereof.

Under the answer involved upon this appeal the defendant New York Life Insurance Company set up four separate defenses. The defendant alleged in the first defense that in August, 1923, the decedent, who was then a minor, was associated with the defendant Lefkowitz in business, and that he continued to be so associated with Lefkowitz until the death of Goldstein, which occurred on August 26, 1927; that the average earnings of Goldstein did not exceed $20 per week. Defendant in its first defense then alleges that immediately prior to August 23, 1923, and thereafter and down to March 30, 1927, at the instance of the defendant Lefkowitz, Goldstein applied to various insurance companies, including the defendant, appellant, for the issuance of policies of insurance upon his life in various amounts, aggregating $174,000, and that there was in fact issued by various companies upon the life of Goldstein insurance pursuant to said applications aggregating $70,000. It is further alleged in the first separate defense of the said defendant, that the seven policies in suit were issued by said defendant, aggregating $30,000, and that the assured applied for each of said policies at the instance of the defendant Lefkowitz, and that substantially all of the premiums upon said policies were paid by the defendant Lefkowitz; that the total premiums upon said policies annually payable amounted to $1,728.40, whereas the annual income of said Goldstein did not exceed $1,040. It is further alleged that all of said policies issued upon the life of said Goldstein were by him delivered and assigned to the defendant Lefkowitz. The defendant further alleges in its first defense that prior to May 19, 1926, the date of the first application by said Goldstein to the defendant New York Life Insurance Company for the issuance of the first policy in suit, the defendant Lefkowitz had conceived a plan to defraud the defendant company and the

other life insurance companies and had conspired with said Goldstein for such purpose, and that he induced Goldstein to apply to the defendant company and other companies for a large amount of insurance on his life to be made payable to the defendant Lefkowitz; that pursuant to such conspiracy the seven policies were obtained from the defendant company; that the said conspiracy between the defendant Lefkowitz and the said Goldstein involved a scheme whereby Goldstein was to disappear under circumstances which would indicate his death, and that upon proof thereof the defendant Lefkowitz was to collect upon all of said insurance policies, including those in suit, and share the proceeds thereof with the said Goldstein. It is further alleged that at some time during the progress of said conspiracy the defendant Lefkowitz determined to bring about the death of said Goldstein in order that he, Lefkowitz, might obtain all of the proceeds of said insurance policies. The defendant then alleges that thereafter and on or about August 26, 1927, Goldstein, pursuant to the fraudulent conspiracy aforesaid, attempted to simulate a drowning, believing that the defendant Lefkowitz would rescue him and enable him to disappear and share in the proceeds of said policies after their collection; that the defendant Lefkowitz deceived the said Goldstein regarding said rescue plan and on said August 26, 1927, the defendant Lefkowitz, from a deliberate and premeditated design to effect the death of said Goldstein, procured the felonious and unlawful murder and killing of said Goldstein, said killing being achieved by the violent precipitation of said Goldstein into Gravesend Bay, in the county of Kings, State of New York, and the drowning of said Goldstein in said Gravesend Bay. The defendant further alleges that thereafter and on November 30, 1927, Lefkowitz was duly convicted in the Supreme Court, State of New York, of murder in the first degree for having procured the said killing of said Goldstein, and thereafter and on the sixth day of December he was duly sentenced by said court to be executed by the State of New York for having committed the said murder; that the judgment convicting him was duly affirmed by the Court of Appeals on May 29, 1928 (*People* v. *Lefkowitz*, 248 N. Y. 581). Defendant alleges that it had no notice or knowledge of the fact of such conspiracy to defraud it until after the death of Goldstein, and that thereafter and on March 31, 1928, the defendant company duly notified the plaintiff that it elected to rescind and cancel each and all of said policies because of the circumstances under which they were obtained, and further notified plaintiff that in any event it denied all liability thereunder because of the purpose for which said policies were issued and the circumstances under which said Goldstein met his death, and at the same time tendered to plain-

tiff the amount of the premiums paid on said policies with inter est thereon, which tender was refused. The tender of the premiums on said policies with interest is renewed in the said first defense.

The court at Special Term, I think, very properly held that the first defense contained in the answer was good. While it is true that in the death of the assured the conspiracy was not carried out as originally conceived, which was that the assured should simulate death by drowning and thereafter disappear and his coconspirator collect the amount of insurance upon his life upon the pretense of his death and thereafter share the same with the assured, it none the less is true that the death of the assured was the direct and proximate result of the conspiracy between the assured and Lefkowitz. I think there was a direct causal connection between the death of the assured, under which claim is made for the payment of the policies, and the scheme which had been concocted to defraud the defendant company. Except for the dishonest scheme in which he engaged, Goldstein would still be alive. While the policies were not issued upon any false representation of any fact, yet at the time they were procured the assured and the beneficiary were acting in furtherance of a conspiracy to defraud the defendant insurance company. They knew at that time that the policies were not issued upon the life of the insured, but were issued as a part of a scheme to defraud the insurance company. Under such circumstances I do not think it can be said that there was ever any valid issuance of the policies in suit. Their issuance was procured through a fraud upon the insurance company with intent to swindle the company out of the insurance provided by the policies. I think that, under the circumstances, the defendant company was entitled to rescind the policies, and that, therefore, the first defense pleaded in the answer was good.

In the second defense contained in the answer the defendant repeats and realleges the allegations contained in the first defense with reference to the issuance of the seven policies in suit, and that " at the instance of the defendant Joseph Lefkowitz " Goldstein applied to the defendant insurance company for the said policies, and that after their issuance " the beneficiary of each of said policies was changed to the defendant Joseph Lefkowitz," and in the second defense the defendant further alleges that on or about August 26, 1927, the defendant Lefkowitz, from a deliberate and premeditated design to effect the death of said Goldstein, procured the felonious and unlawful murder and killing of said Goldstein in the manner alleged in the first defense, and that thereafter the said Lefkowitz was convicted of murder in the first degree and sentenced

to be executed for said murder. The court at Special Term held that in the absence of allegations in the second defense that the insurance had been procured by Lefkowitz with an intention on his part to murder the assured, the estate of the deceased might, nevertheless, under the decisions of the courts, recover the amounts of the policies. The court held that while Lefkowitz, by procuring the murder of the assured, had forfeited all right to recover the benefits provided by the policies, nevertheless, under an implied intention between the assured and the insurer, the insurance should be paid to those who would take upon the disqualification of the beneficiary named. While it is true that under some of the authorities cited by the court at Special Term, upon which, with others, the plaintiff relies, it might seem that in case of a disability of the beneficiary to take under the policies, by implication the estate of the assured might still recover thereon, in all of the cases relied upon by plaintiff the policies were validly issued. The assured was innocent of any fraud in obtaining the issuance of the policies. In most of said cases the beneficiary murdered the assured and thereby disqualified himself from receiving the benefits under the policies, and it was held that the assured's estate might recover the death benefits thereunder. The situation here is entirely different. The assured fraudulently procured the issuance of the policies. The policies had no validity for any purpose. It seems to me that the more logical authority is to the effect that the liability imposed upon the defendant by the policy is purely contractual, and that under the policies in suit there should be no recovery against the defendant by the estate to which the insurer promised to pay nothing in the event of the death of the insured. Certainly there was no agreement here in the contract of insurance to pay the estate of the decedent anything. (*Spicer* v. *New York Life Ins. Co.*, 268 Fed. 500.) In that case the United States Circuit Court of Appeals for the Fifth Circuit said: " The liability imposed on the insurer by the policy is purely contractual. That instrument is the measure of the rights of everybody under it. It furnishes no support for a recovery against the insurer by one in whose behalf or favor the insurer has promised to pay nothing in the event of the death of one of the insured, leaving the other surviving. * * * There is no promise to pay anything to the estate, or to the personal representative, of that one of the two insured whose death first occurs during the continuance of the contract."

The United States Supreme Court (255 U. S. 572) denied a writ of certiorari to review the decision of the Circuit Court of Appeals in *Spicer* v. *New York Life Ins. Co.* (*supra*). (See, also, *New York Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S. 591.) The allegations

of the second defense are that subsequently to the issuance of said policies the beneficiary named in each policy was changed by the assured to his coconspirator, the defendant Lefkowitz. I think by such change the assured severed all interest which he had under said policies. I am unable to see any distinction between the act of the assured in changing the beneficiary to Lefkowitz and in assigning the policies themselves to Lefkowitz. As was said in *Spicer* v. *New York Life Ins. Co. (supra):* " In the case of *New York Mutual Life Ins. Co.* v. *Armstrong,* 117 U. S. 591, * * * it was decided that a result of an assignment by the insured in a life policy of his whole interest to one who was convicted of murdering the insured, and was legally hung for the crime, was that the assignee's representative would alone have a valid claim under the policy, *if it were not void in its inception * * *. An unrevoked designation of a sole beneficiary in a life insurance policy itself is not less effective than an assignment of his whole interest by the insured."* (Italics are the writer's.) It was said by the learned court below in striking out the second defense: " It seems to me that a recovery by the estate of the assured can be justified only on the basis that the implied intention of the parties was that if the beneficiary should be unable to take, the insurance should be paid to those who would take in the absence of a beneficiary." (133 Misc. 106, 108.)

I am unable to understand how the court could find any implied intention on the part of the parties to the policy, namely, the assured and the defendant insurance company, that the insurance should go to the personal representatives in case the beneficiary could not take. Here was a policy obtained by fraud and under circumstances of which the company was entirely ignorant. How can it be said that there was any implied intention under such circumstances that if a person engaged in defrauding the company could not take, nevertheless the estate of the other coconspirator engaged in the fraud should be entitled to recover the amount of the insurance? These policies were all issued as a part of the fraudulent and dishonest scheme to rob the defendant insurance company. The fraud perpetrated by the assured and Lefkowitz in procuring the policies vitiated the contracts. They were void in their inception. They were never valid, enforcible contracts. Under what principle of law or justice should an estate of one procuring the issuance of policies by fraud be permitted to profit by such fraud? Never for a moment could the decedent enforce the policies which he fraudulently procured to be issued. Why should his estate profit by his dishonesty? The court in striking out the second defense calls attention to the fact that an averment thereof is that the policies were applied for by the assured " at the instance of " Lef-

kowitz, and states that such allegation is not equivalent to an allegation that Lefkowitz procured the policies to be issued. I am unable to distinguish between an allegation that Lefkowitz procured the policies to be issued and the allegation contained in the defense, that they were issued upon an application made at the instance of Lefkowitz. I see no rhyme nor reason in allowing the estate of this dishonest conspirator, who met his death as the direct and proximate result of the conspiracy, to profit by his dishonest act. The order appealed from should, therefore, be modified by denying the motion of the plaintiff to strike out the second defense.

As to the third defense, such defense differs from the second defense in that it therein alleged " that after the issuance of said policies said Ben Goldstein delivered and assigned and transferred said policies to the defendant Joseph Lefkowitz." In all other respects the third defense seems to be identical with the second defense contained in the answer. For reasons before stated, I think such defense is good, because when Goldstein assigned and delivered and transferred to Lefkowitz each of the said policies, he surrendered all right, title and interest therein, and all contractual relations between himself and the company were terminated. His only connection thereafter with the policies was that they became payable upon his death. There certainly, under such circumstances, can be no implied understanding that the parties intended, in the event of the disqualification of Lefkowitz, that the insurance should be paid to the estate of the insured.

The fourth separate defense contained in the answer of the defendant appears to be identical with the first defense, with the added allegation that the assured met his death while engaged in the commission of the fraudulent conspiracy alleged in the first defense, and that thereby Goldstein forfeited and lost any and all rights he otherwise may have had or acquired under or on account of said policies, and that neither the plaintiff nor the defendant Lefkowitz nor any other person can recover from the defendant company any sum whatever under or on account of said policies or any of them. As before stated, while under the original conspiracy between Goldstein and Lefkowitz the death of Goldstein was not contemplated, nevertheless, he died as a direct and proximate result of the conspiracy which had been concocted between himself and Lefkowitz. There was a direct causal connection between the conspiracy and the cause of the death of the assured. Under such circumstances there should be no right of recovery under either of the policies in suit.

The order appealed from should be modified by denying the motion to strike out the second defense, and as so modified affirmed,

with ten dollars costs and disbursements to the defendant New York Life Insurance Company.

Dowling, P. J., and Martin, J., concur; O'Malley and Proskauer, JJ., dissent as to second defense and vote for affirmance of order.

Proskauer, J. (dissenting). I dissent from so much of the opinion of Mr. Justice Merrell as holds the second defense to be good. There are no allegations, contained in that defense, of fraud in the inception of the policy. The paragraphs of the first defense incorporated by reference likewise contain no such averments. As I read the second defense, it is predicated upon the legal proposition that the fact of the murder of the insured by the beneficiary necessarily constitutes a defense in an action by the estate of the insured. The overwhelming weight of authority is to the contrary. (*Cleaver* v. *Mutual Reserve Fund Life Assn.*, L. R. [1892] 1 Q. B. 147; *New York Life Ins. Co.* v. *Davis*, 96 Va. 737; 32 S. E. 475; *Schmidt* v. *Northern Life Assn.*, 112 Iowa, 41; *Knights & Ladies of Honor* v. *Menkhausen*, 209 Ill. 277; *Anderson* v. *Life Ins. Co. of Va.*, 152 N. C. 1; *Metropolitan Life Ins. Co.* v. *Shane*, 98 Ark. 132; *Equitable Life Assur. Soc.* v. *Weightman*, 61 Okla. 106; *Robinson* v. *Metropolitan Life Ins. Co.*, 69 Penn. Super. 274; *Murchison* v. *Murchison*, 203 S. W. [Tex. Civ. App.] 423; *Welch* v. *Travelers' Ins. Co.*, 178 N. Y. Supp. 748; *Kascoutas* v. *Federal Life Ins. Co.*, 193 Iowa, 343; 185 N. W. 125; *Henry* v. *Knights & Daughters of Tabor*, 156 Ark. 165; *Slocum* v. *Metropolitan Life Ins. Co.*, 245 Mass. 565; *Hewitt* v. *Equitable Life Assur. Soc.*, 8 F. [2d] 706.)

For these reasons I think the order appealed from should be affirmed.

O'Malley, J., concurs.

Order modified by denying motion to strike out second defense, and as so modified affirmed, with ten dollars costs and disbursements to defendant New York Life Insurance Company.