[Civ. No. 6751. Second Appellate District, Division Two.—July 27, 1931.]

MARY MEYER, Administratrix, etc., et al., Appellants, v. GRANVILLE WILLIAM JOHNSON et al., Respondents.

Laird L. Neal and Burke, Catlin & Burke for Appellants.

Meserve, Mumper and Hughes & Robertson and Timon E. Owens for Respondents.

WORKS, P. J.—The complaint in this action purports to state two causes of action, each designed to recover on one of two policies of life insurance. We shall treat the controversy, in our discussion of it, as if there were but one cause of action, as the questions presented by the appeal are identical as to each of the two alleged causes.

Among other things it is alleged in the pleading of plaintiffs that Mary Meyer is administratrix of the estate of Hazel Edna Johnson, deceased, and the guardian of Robert William Paul, all as stated in the title to the action; that Robert Paul is a minor, the only living child and heir at law of Hazel Johnson; that on or about April 21, 1926, there was issued by defendant life insurance company and delivered to Hazel Johnson and defendant Granville William Johnson,

her husband, a policy of insurance on the life of Hazel payable to Granville; that on or about May 2, 1926, Granville did unlawfully and feloniously kill and murder Hazel; that he was arrested, tried and convicted of the murder, in Arizona, and that judgment of death was pronounced by the court against him. Judgment is prayed in the complaint here that the face of the policy and interest thereon be by defendant life insurance company paid to the estate of Hazel, for the benefit of the plaintiff Paul.

Defendant life insurance company interposed an answer to the complaint, in which it pleaded both defensive and affirmative matter.

At the trial objection was made to the reception of evidence to support the allegations of the complaint on the ground that the pleading did not state a cause of action. The objection was sustained and judgment went for defendants. The plaintiffs appeal.

 When the beneficiary under a life insurance policy murders the insured he cannot recover on the instrument. This rule is based upon public policy and is supported by a multitude of cases extending over a widespread jurisdiction, so much so that it is unnecessary to refer to any of them.

The question presented for our decision is whether the avails of the policies here in question have become, because of the murder of the insured by the beneficiary, a part of her estate and therefore, ultimately, the property of the minor Paul, her sole heir, it being conceded in the briefs that he is not an heir of the beneficiary. The authorities on one side of this question are quite numerous and thoroughly convincing. It can hardly be said that any cases cited by respondent really oppose them. The authorities first mentioned support the sensible view that the fund here in question is a part of Hazel Edna Johnson's estate. It is contended that those cited by respondent take the very unsatisfactory view that the fund goes on to the heirs of her murderer, despite the fact that it can never become a part of his estate. It is to be observed here that it appears from remarks in the briefs that the sentence of death passed upon Johnson was commuted to life imprisonment and that he is now confined in a penitentiary in Arizona.

We shall cite but a few of the authorities to the effect that the proceeds of the insurance policy here in question

are rightfully a part of the estate of Hazel Johnson, deceased. It is said in 29 Cyc., at pages 156, 157, in an article entitled "Mutual Benefit Insurance": "In case the designation of a beneficiary proves for any reason to be ineffectual, the fund does not as a rule revert to the society", and the text then shows to whom the fund does go under certain varying conditions. It is stated, for instance, that where the beneficiary was eligible at the time of his designation but "since became ineligible or disqualified and so not entitled to take the benefit at the time of the member's death", some other person will take. To this portion of the text is appended the following note: "If the beneficiary murders the member, and so loses his rights as such . . . , the fund may be recovered by such other persons (clearly the heirs of the insured) as would take had no beneficiary been designated." To this statement are cited two cases, one of which is *Schmidt* v. *Northern Life Assn.*, 112 Iowa, 41 [84 Am. St. Rep. 323, 51 L. R. A. 141, 83 N. W. 800]. This case upholds the rule as stated in the note in 29 Cyc. and gives most excellent reason for it. The second case cited in the note in 29 Cyc. is *Supreme Lodge, etc.,* v. *Menkhausen,* 209 Ill. 277 [101 Am. St. Rep. 239, 65 L. R. A. 508, 70 N. E. 567]. This decision also deserves a careful reading as supporting the contention made by appellants. A short but lucid and convincing opinion in support of the view of appellants is to be found also in *Anderson* v. *Life Ins. Co. of Virginia,* 152 N. C. 1 [67 S. E. 53]. Another valuable case is *Equitable Life Assur. Soc.* v. *Weightman,* 61 Okl. 106 [L. R. A. 1917B, 1210, 160 Pac. 629]. Not only is this so because the opinion rendered by the court sustains the contention of appellants, but also because the court cites several text-writers and several other decisions to the same effect. See, also, *Sharpless* v. *Grand Lodge A. O. U. W.,* 135 Minn. 35 [L. R. A. 1917B, 670, 159 N. W. 1086], and the note appended to the report last mentioned.

It is difficult to see how this line of cases can be overcome and how the public policy which seems to shine through them can be shown not to exist, but let us now turn to the cases cited by respondent. *Mutual L. Ins. Co.* v. *Armstrong,* 117 U. S. 591 [29 L. Ed. 997, 6 Sup. Ct. Rep. 877, 880], is not in point. In that case the only question decided was that the trial court had erred in excluding certain evidence which

was material· to a determination of the point as to whether an assignee of the beneficiary had murdered the insured. Because of the exclusion of this evidence the cause was sent back for a new trial. There is, however, some *obiter* in the opinion which leans toward the contention of respondents. Of this we shall make some mention for the reason that it has been given a fictitious value in one or two other cases. The opinion was rendered upon writ of error and related to an action brought in New York by the administratrix of a deceased insured who was murdered by or at the instance of an assignee of the insurance policy upon the former's life. The defendant in this action was the insurance company, and by the action it was attempted to procure judgment for the avails of the policy. In the course of the opinion Justice Field said (the individual named in the quotation having been the murderer of the insured) : "The assignment conveying to Hunter the whole interest of the insured, his representatives alone would have a valid claim under it, if the policy were not void in its inception." This language is *obiter* for the reason that the evidence which was ruled out by the trial court, the reversal ·having been ordered because thereof, was properly admissible whether that court were finally to decide that the "valid claim" could be made only by the personal representatives of the insured or by those of the murderer. It was therefore necessary to go no further than to say that the evidence was admissible, especially as the order made was for a reversal and for a new trial. The refused evidence went only to the question whether Hunter was the murderer of the assured.

The *obiter* in *Mutual L. Ins. Co.* v. *Armstrong, supra,* is quoted in *Spicer* v. *New York L. Ins. Co.,* 268 Fed. 500. In the last-mentioned case the court also, following certain other cases decided by the Supreme Court of the United States, says: "The liability imposed on the insurer by the policy is purely contractual. That instrument is the measure of the rights of everybody under it. It furnishes no support for a recovery against the insurer by one in whose behalf or favor the insurer has promised to pay nothing in the event of the death of one of the insured, leaving the other surviving." We think this language can have no application here. In the case cited the policy was one insuring the lives of both husband and wife, the amount named in the instrument to be

paid to either spouse upon the decease of the other. The husband murdered the wife, and the federal court held that the personal representatives of the wife could not recover, for the reason stated in the above quotation, declaring, incidentally, that the murderer, who was under life imprisonment because of the murder, had no interest in the instrument. We are not concerned with the question whether the language quoted from the opinion affords support for the conclusion reached by it, but we are amply satisfied that it has no bearing whatever upon the case now before us.

We have also examined *Goldstein* v. *New York Life Ins. Co.*, 225 App. Div. 642 [234 N. Y. Supp. 250], cited by respondent, but see nothing in the opinion there rendered which can be of assistance to us.

As we have already observed, a murderer of a person whose life is insured, the murderer being the beneficiary under the insurance policy, cannot make a valid claim upon it. This rule is announced even in the cases cited by respondent. The rule is no violation of the provision of American codes to the effect that the commission of crime shall not result in the corruption of heritable blood. In the interest of the common welfare and in the maintenance of a just and enlightened public policy it merely prevents the perpetrator of the most hideous of crimes from profiting by his felonious conduct. This public policy surely extends further than we have indicated heretofore. If the rule were that the personal representatives of murderously inclined beneficiaries might take money made bloody by the slaying of those inclined to generosity, how many individuals who now walk the streets might ride in Rolls-Royces or emulate the eagle in his dizzy flight? By such a rule many a beneficiary, aged or infirm, and contemplating a young and healthful assured, would be tempted to commit a crime which would enrich his heirs, although it were too late to enrich himself. Indeed, many a man has committed atrocious crimes for the benefit of his children.

In some of the earlier cases like the present some of the insurance companies attempted to void policies when those who were assured had been murdered by those they had named as beneficiaries. So far as we have discovered these attempts have been uniformly frustrated, and it has been decided that the avails of the policies must be paid to some-

one. It is horrifying to think that the money could be paid to the representatives of murderers. It is soothing to think that it can go to the heirs of the murdered. At any rate, we think it is the law that these latter should receive it.

Judgment reversed.

Craig, J., and Thompson (Ira F.), J., concurred.