Willie A. DAVIS, Appellant,

v.

AETNA LIFE INSURANCE COMPANY, Charles S. Swanegan, Daisy Swanegan, and Lloyd W. Swanegan, as Administrator, Appellees.

No. 16494.

United States Court of Appeals Ninth Circuit.

May 21, 1960.

Rehearing Denied July 6, 1960.

---

1. It may be that other conspicuous and readily attachable property was in the district, but this does not appear, either.

Pope, Circuit Judge, dissented.

Garry, Dreyfus, McTernan & Keller, San Francisco, Cal., Solomon E. Johnson, San Francisco, Cal., for appellant.

Luce, Forward, Hamilton & Scripps, Orfield & Thompson, San Diego, Cal., for appellee.

Before POPE and JERTBERG, Circuit Judges, and KILKENNY, District Judge.

JERTBERG, Circuit Judge.

Appellant appeals from a summary judgment rendered by the district court denying appellant's claim to the proceeds of two insurance policies on the life of his wife.

Diversity of citizenship exists between the parties and the amount in controversy, exclusive of interest, exceeds the required statutory amount. The district court had jurisdiction under Title 28 U.

S.C.A. § 1332. This Court's jurisdiction to review the judgment rests on Title 28 U.S.C.A. §§ 1291, 1294.

At the time of her death the wife of the appellant was the insured under two policies of insurance issued by the Aetna Life Insurance Company on her life. The appellant was the designated beneficiary in both policies. In one policy it was provided that in the event the designated beneficiary should pre-decease the insured, the insured's parents were to be the recipients of the proceeds of such policy. In the other policy it was provided that in the event that the designated beneficiary should pre-decease the insured the proceeds of such policy were to be paid to the estate of the insured.

On November 23, 1956, appellant killed his wife. Thereafter he pleaded guilty to the crime of voluntary manslaughter before the Superior Court of the State of California, in and for the County of San Diego. He was convicted on his plea and was duly sentenced to confinement under the laws of the State of California. As primary beneficiary under both policies, appellant made demand upon the Aetna Life Insurance Company for payment to him of the proceeds of such policies. The parents of the deceased insured, as contingent beneficiaries under one policy, likewise made demand on the insurance company for the payment of the proceeds of such policy to them. The administrator of the estate of the deceased insured likewise made demand on the insurance company for payment to him of the proceeds of the policy in which the estate of the insured was the contingent beneficiary. Thereupon the insurance company commenced the action by filing in the district court a complaint for interpleader praying that the appellant as designated beneficiary, the parents of the deceased insured and the administrator of the estate of the deceased insured be required to interplead their respective claims to the proceeds of such policies.

The relief sought by the insurance company was granted upon deposit into the registry of the court of the amounts payable under such policies. Such amounts were deposited and the insurance company was discharged from further liability under said policies.

The interpleader complaint alleged that the insured was killed by the act of appellant and that appellant pleaded guilty to the crime of voluntary manslaughter in the Superior Court of the State of California in and for the County of San Diego and was duly convicted and sentenced on such plea. The appellant, who was not represented by counsel in the proceedings before the district court and who was then and still is confined in a penal institution in the State of California, filed an inartistic pleading in which he alleged the killing of his wife was accidental and claimed the proceeds of both policies. The parents of the deceased insured filed their pleading to the complaint in interpleader and claimed the proceeds of the policy in which they were designated as the contingent beneficiaries. The administrator of the estate of the deceased insured likewise filed a pleading in which he claimed the proceeds of the policy in which the estate of the deceased insured was the contingent beneficiary.

Following several pre-trial conferences, of which the appellant was given notice but at which his incarceration prevented his appearance, the parents of the deceased insured and the administrator filed motions for summary judgment in their favor under the provisions of Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The appellant was notified of the time and place of the hearing of such motions, but of course was unable to be present. No affidavit or deposition was filed by appellant in connection with the hearing on said motions. At the hearing on the motions for summary judgment there was received in evidence a certified copy of the record of the criminal proceedings in the Superior Court of the State of California in and for the County of San Diego, showing that appellant had pleaded guilty to the crime of voluntary manslaughter, that he had been convicted of such crime on his plea of guilty and had been duly sen-

tenced. Upon such record the district court granted the motions for summary judgment, the effect of which was to award the proceeds of the policies to the parents of the deceased insured and the administrator of the estate of the deceased insured and denied the claim of appellant thereto.

The record is clear that prior to the granting of the summary judgment, the district judge was concerned as to whether or not the appellant had the right to offer testimony concerning the circumstances of the killing of the insured, in view of his plea of guilty to the offense of voluntary manslaughter and his conviction on such plea.

The findings of fact and conclusions of law entered by the trial court make it abundantly clear that the district judge entertained the view that under California law appellant's plea of guilty to the crime of voluntary manslaughter and his conviction of such offense conclusively established that appellant was not entitled to participate in the proceeds of the insurance policies, and for such reason the court was precluded from receiving testimony relating to the circumstances of the killing. In the findings of fact the district court found:

"Defendant, Willie A. Davis, is the surviving husband of Sylvia Swanegan Davis, and was named as beneficiary under both of above referred two policies of insurance; that on or about February 8, 1957, defendant, Willie A. Davis, was convicted of the crime of voluntary manslaughter of Sylvia Swanegan Davis, upon his plea of guilty thereto in the Superior Court of the State of California, in and for the County of San Diego."

The court also found:

"The law and public policy of the State of California provides that a person who is convicted of the crime of voluntary manslaughter of a person cannot recover insurance proceeds of insurance policies on the life of said decedent."

From such findings the court concluded that appellant was not entitled to share in the proceeds from the life insurance on his wife.

The question presented on this appeal may be stated as follows: Does proof of the record of conviction in the criminal proceedings of appellant of the crime of voluntary manslaughter conclusively bar him from recovery of the proceeds of the insurance policies in question? If the answer to such question is to be in the affirmative, the judgment of the district court must be affirmed. If in the negative, the judgment must be reversed and the cause remanded to the district court to afford appellant an opportunity to offer evidence in support of the allegation contained in his answer that the killing of his wife was accidental.

■ Since federal jurisdiction is dependent upon diversity of citizenship, we are to be governed in our decision in this case by the law of the State of California. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The parties to this appeal agree that the precise point involved has not been passed upon by the reviewing courts of the State of California. In support of the judgment appellees rely heavily on the following enactments of the legislature of the State of California:

1. Section 258 of the California Probate Code, which provides:

"No person convicted of the murder or *voluntary manslaughter* of the decedent shall be entitled * * * to any portion of the estate; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter." (Italics ours.)

This section when originally enacted included only conviction of the crime of murder. In 1955 the section was amended to place voluntary manslaughter in the same category as murder.

2. Section 3517, California Civil Code, which provides: "No one can take advantage of his own wrong."

Appellees also rely upon the following decisions of the reviewing courts of the State of California: Estate of Lysholm, 1947, 79 Cal.App.2d 467, 179 P.2d 833; Abbey v. Lord, 1959, 168 Cal.App.2d 499, 336 P.2d 226; Beck v. West Coast Life Insurance Co., 1952, 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979; Drown v. New Amsterdam Casualty Co., 1917, 175 Cal. 21, 165 P. 5.

The predecessor section of Section 258 of the Probate Code is Section 1409 of the Civil Code of the State of California, which was enacted in 1905. As enacted the latter section provided that:

"No person who has been convicted of the murder of the decedent shall be entitled to succeed to any portion of his estate; but the portion thereof to which he would otherwise be entitled to succeed descends to the other persons entitled thereto under the provisions of this title."

This section was first construed by the Supreme Court of the State of California in Estate of Kirby, 1912, 162 Cal. 91, 121 P. 370, 39 L.R.A.,N.S., 1088. In that case the court refused to extend the section to conviction of manslaughter and held that the killer was entitled to share in the estate of the deceased ancestor. At page 94 of 162 Cal., at page 371 of 121 P., the court states:

"Whether this accords with natural right and justice is a question upon which we cannot enter. The right of inheritance in this state does not depend upon the ideas of court or counsel as to justice and natural right. The entire matter is in the control of the Legislature, and depends wholly upon the provisions of the statute, regardless of our notions of natural right and justice. (Estate of Wilmerding, 117 Cal. 284 [49 Pac. 181]; Sharp v. Loupe, 120 Cal. 91 [52 Pac. 134, 586]; Estate of Porter, 129 Cal. 88 [79 Am.St. Rep. 78, 61 Pac. 659].) The statute having made the distinction between murder and manslaughter, the courts cannot ignore it or create a definition of the word 'murder' different from that declared in the statute and from that of the common-law and ordinary usage. * * * "

After the enactment of Section 258 of the Probate Code, and prior to its amendment in 1955 adding the words "or voluntary manslaughter," the same question was presented in the case of Estate of Daniels, 1953, 120 Cal.App.2d 284, 260 P. 2d 991. In that case the sole devisee of a will was convicted of the crime of manslaughter of the testator. It was urged that the devisee could not so qualify because the testator met his death at the hands of the devisee. The court in disposing of such contention states:

"Section 258, Probate Code as it now reads is substantially the same as the original section. The court [in the Kirby case] held that a person convicted of manslaughter did not come within the provisions of the section. In re Estate of Lysholm, 79 Cal.App.2d 467, 179 P.2d 833 cites several later cases on the same subject. The Kirby case is a sufficient answer to appellants' contention, but they invoke the broader ground that 'No one can take advantage of his own wrong', § 3517, Civ.Code, and in that connection stress questions of morality and public policy. The Kirby case supplies the following answer to those arguments: 'Whether this accords with natural right and justice is a question upon which we cannot enter. The right of inheritance in this state does not depend upon the ideas of court or counsel as to justice or natural right. The entire matter is in the control of the Legislature and depends wholly upon the provisions of the statute, regardless of our notions of natural right and justice. (Estate of Wilmerding, 117 Cal. 284 [49 Pac. 181]; Sharp v. Loupe, 120 Cal. 91 [52 Pac. 134, 586].; Estate of Porter, 129 Cal. 88 [79 Am.St. Rep. 78, 61 Pac. 659].)

" 'The right of inheritance * * as well as the right of testamentary

*disposition* are entirely within the control of the state legislature and are subject only to the conditions prescribed by such body [citations; emphasis added.]' In re Estate of Scott, 90 Cal.App.2d 21, 23, 202 P.2d 357, 358. The legislature has not seen fit in almost 50 years since the enactment of § 1409, Code Civ. Proc. (now § 258, Pro.Code) to extend the rule which that section announces.

"Beck v. West Coast Life Ins. Co., 38 Cal.2d 643, 241 P.2d 544, 26 A.L. R.2d 979, which appellants cite, is not in point since it involved a policy of life insurance.

"The order and decree appealed from are affirmed." [120 Cal.App. 2d 284, 260 P.2d 996.]

█ We are satisfied that under the law of the State of California that where one insures his own life for the benefit of another person and the beneficiary murders or unlawfully kills the person insured, public policy will not allow the beneficiary to recover upon the policy. Drown v. New Amsterdam Casualty Co., 1917, 175 Cal. 21, 165 P. 5; Meyer v. Johnson et al., 1943, 115 Cal.App. 646, 2 P.2d 456. It is also established in the law of the State of California that in the event of an intentional killing of the insured by a primary beneficiary the insurance policy does not lapse but the contingent beneficiaries thereupon become entitled to the insurance proceeds. Beck v. West Coast Life Insurance Co., 1952, 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979. Under such circumstances if no contingent beneficiary is designated in the policy the proceeds thereof are payable to the estate of the murdered insured. Meyer v. Johnson, supra; West Coast Life Insurance Co. v. Crawford, 1943, 58 Cal.App.2d 771, 138 P.2d 384. On the other hand, it is established in California law that a beneficiary who brings about the death of the insured through the commission of the offense of involuntary manslaughter is not thereby precluded from recovering the insurance proceeds. Throop v. Western Indemnity Co., 1920, 49 Cal.App. 322, 193 P. 263, 264. This case holds that involuntary manslaughter amounts to an "accident" within the terms of the insurance policy and that a "death which is unintentional though caused by some neglect or unlawful act of the beneficiary, is within the contract, and ought not to defeat the policy."

We now reach the ultimate question presented on this appeal: Does proof of appellant's conviction in a criminal proceedings of the crime of voluntary manslaughter deprive him under the law of the State of California of the opportunity to show that the killing of his wife was accidental, and hence not intentional?

Admittedly the legislature of the State of California has enacted no statute which provides that no beneficiary of a life insurance policy who is convicted of the murder or voluntary manslaughter of the insured under such policy shall be entitled to any portion of the proceeds derived therefrom. As stated in Beck v. West Coast Life Insurance Co., supra, 38 Cal.2d at page 647, 241 P.2d at page 547:

"In the case of intestate succession there is a specific statutory provision preventing a convicted murderer from succeeding to any part of the estate of his victim and providing how the murderer's share should be distributed. (Probate Code § 258.) Although there is no such specific provision governing the disposition of the proceeds of life insurance, it may be contended that the public policy expressesd in the Probate Code prevents the passage of either equitable or legal title to the murderer."

The court then stated that it was unnecessary to decide that question. It is to be noted from the cases cited supra that the reviewing courts of the State of California have limited the application of Probate Code, § 258 to situations which come within the plain meaning of the language of the section, and that such meaning is not to be enlarged by the language contained in Civil Code, § 3517.

Appellees contend that the rationale of Estate of Lysholm, supra, which was de-

cided prior to the 1955 amendment to Section 258 of the Probate Code is "that a *mere conviction,* without more, precludes a person convicted of voluntary manslaughter from participating' in the insurance proceeds on the life of his deceased victim." The case involved a husband convicted of manslaughter in the killing of his wife. The probate court made its decree distributing to the husband one-half of her separate property and the whole of the community property. Included within the husband's portion of the separate property was one-half of the proceeds of an insurance benefit fund which his wife had carried on her life. The insurance money was paid to the estate of the decedent. The court held that the decree of distribution was proper unless upon some theory which would prohibit the husband taking any part of the insurance money. The court stated at page 468 of 79 Cal.App.2d, at page 834 of 179 P.2d:

"Probate Code Section 258 provides that no person convicted of murder shall succeed to any portion of the estate of his victim. This section is substantially the same as Civil Code Section 1409, which it superseded. Construing the section, it has been held that there must have been an actual conviction of the heir for murder of the ancestor. Estate of Agoure, 165 Cal. 427, 132 P. 587; 9 Cal.Jur. 468. If there be a conviction of murder, then neither the murderer nor his heirs have any right to the insurance money. West Coast Life Insurance v. Crawford, 58 Cal.App.2d 771, 138 P.2d 384. Conviction of the crime of manslaughter does not destroy the right of the heir to take. Estate of Kirby, 162 Cal. 91, 121 P. 370, 39 L.R.A. N.S. 1088, Ann.Cas.1913C, 928. When the death is the result of accident, or even when caused, by such gross negligence on the part of the beneficiary that he was guilty of involuntary manslaughter, the beneficiary may still recover. Throop v. Western Indemnity Co., 49 Cal.App. 322, 193 P. 263; 29 Am.Jur. 979; 45 C.J. 226.

"Appellants contend that the insurance was forfeited by the terms of the benefit agreement, and thus became earmarked for distribution to the sisters only. This contention is based upon arguments of public policy. However, the cases just cited, define the limits of the public policy involved. Under the stipulated facts in this case neither this Court nor the Probate Court may go further than to infer that the death of the insured was because of conduct on her husband's part which was involuntary manslaughter. Therefore, he is not barred from taking *his share of her estate as her heir.*"

Appellees contend that the language of the court directly indicates that "the court construes Section 258 of the California Probate Code to include within its terms the public policy of the state in respect to insurance as well as general succession in probate." In our view the case is simply an application of Probate Code, § 258, since the proceeds of the insurance policy were distributed through the estate of the insured and not directly. Probate Code, § 258 prohibits such succession. All the case indicates is that if the section had contained the words of the 1955 amendment, which added the words "or voluntary manslaughter", such added language would have been given effect.

Appellees also place reliance upon Abbey v. Lord, supra. In this case the husband killed his wife. He was charged with murder and entered a plea of guilty to manslaughter. The criminal court determined the same to be voluntary. The administrator of the deceased wife's estate brought a quiet title action to establish a constructive trust in property held jointly by the husband and wife. Appellees state in their brief, "The opinion indicates that the case was decided on the mere record of conviction and nothing more." In our view such statement is not borne out by the opinion. On page

504 of 168 Cal.App.2d, at page 230 of 336 P.2d the court states:

> "The decisive fact in the case at bar is the voluntary, unlawful, and felonious killing of one joint tenant by the other as distinguished from an unintentional killing. It appears that defendant stabbed his wife with a butcher knife in the abdomen and throat, causing her immediate death in an argument over the deceased wife's refusal to join with him in signing a check drawn on the joint tenancy account here involved. The controlling facts cannot possibly be disregarded in a just determination of this case."

Furthermore, an examination of the briefs and record on appeal in the case discloses that the conviction of the husband of the offense of manslaughter was received by way of stipulation, and it was assumed by court and counsel that the killing was intentional. The findings and conclusions of the trial court are phrased in terms of a "killing" and not in the terms of "conviction". Our analysis of the case leads us to the conclusion that the question presented to the reviewing court was whether one joint tenant who intentionally kills another joint tenant may acquire the entire estate held jointly, and not the question as to the conclusive effect of the record of conviction, which is the question with which we are dealing. The court held that the Probate Code section had no direct application to the case. The court did hold that a joint tenant who intentionally kills the other joint tenant may not succeed to the entire estate held in joint tenancy.

■ We have found no California case which holds that the record of conviction of a beneficiary of the crime of voluntary manslaughter of the insured is conclusive in a subsequent civil action by the beneficiary to recover upon the policy of insurance. Clearly the record of conviction in the criminal case is not res adjudicata of the issues involved in the civil suit. The California cases on insurance policies which are cited above speak in terms not of conviction but rather in terms of the act of commission or perpetration of an intentional killing. The Throop case, supra, holds when the death is the result of an accident or even when caused by such gross negligence on the part of a beneficiary that he is guilty of involuntary manslaughter the beneficiary may still recover.

■ There is nothing in the record before us which discloses the facts underlying the record of conviction. In his answer filed to the complaint in interpleader defendant alleged that such facts would disclose that the killing of his wife was accidental. It appears to us that there was thus presented to the district court an apparent genuine issue as to a material fact. This issue was not disposed of by affidavit, deposition or testimony. Proof of appellant's record of conviction in the criminal case is clearly admissible against appellant in this civil action, not as a judgment establishing the fact, but as an admission against interest. Langensand v. Obert, 129 Cal.App. 214, 18 P. 2d 725. A plea of guilty in a criminal proceedings may be explained in a subsequent civil action. Odian v. Habernicht, 133 Cal.App.2d 201, 283 P.2d 756. In our view of California law, the record of conviction is not conclusive that the killing by appellant of his wife was intentional.

A summary judgment is proper only when there is no genuine issue as to a material fact and when the moving party is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

We hold that the trial court erred in giving conclusive effect to the record of conviction of the crime of voluntary manslaughter. The appellant is entitled to the opportunity of presenting such evidence as he may have in support of his allegation that the killing of his wife was accidental. If it should appear to the trial court, following a hearing on the issue raised by appellant, that appellant intentionally killed his wife, then under California law appellant cannot recover any of the proceeds of the insurance policies in question.

The judgment is reversed and the cause remanded to the district court for further appropriate proceedings consistent with the views herein expressed.

POPE, Circuit Judge.

I dissent. If the man who killed his wife cannot collect the insurance it is not because § 258 of the Probate Code applies in strict terms. The terms of that section, as noted in the opinion, refer to persons who may not "succeed to any portion of the estate."

The fact that we have here a problem of collection of insurance, not one of succession to an estate, does not give the insurance proceeds to the killer. He is confronted by a California rule of public policy; and while the California cases are not as specific as they might be, I cannot read them without concluding that in their view the statement of this public policy is taken directly from the expressions found in § 258.

Thus, in Meyer v. Johnson, 115 Cal. App. 646, 2 P.2d 456, the husband was convicted of the murder of the wife on whose life a policy was issued. The court held that the husband-beneficiary could not have the proceeds. The significant thing is that there is not one word in the the opinion suggesting that he cannot have them "if at the trial it is proven that he actually did wilfully kill his wife." It was enough for that court that he was *convicted* of murder. No further inquiry is indicated. Speaking of the public policy involved, the court said (2 P.2d 456): "When the beneficiary under a life insurance policy murders the insured he cannot recover on the instrument. This rule is based upon public policy and is supported by a multitude of cases extending over a wide-spread jurisdiction, so much so that it is unnecessary to refer to any of them." [1]

What this public policy is, where it comes from, was indicated in Beck v. West Coast Life Ins. Co., 38 Cal.2d 643, 241 P.2d 544, 547, 26 A.L.R.2d 979. There, as in the Meyer case, supra, the court took it for granted that the *conviction* of the husband ended his claims. The court was concerned with whether the money would go to the deceased wife's estate, or to her alternate beneficiary. In an effort to describe what had happened, the court, after referring to Probate Code, § 258, said: "Although there is no such specific provision governing the disposition of the proceeds of life insurance, it may be contended that *the public policy expressed in the Probate Code* prevents the passage of either equitable or legal title to the murderer." (Emphasis added.)

The question is how is the public policy that prevents the homicidal husband's recovery of insurance to be stated? Do we state it thus "One who wilfully kills another may not take as beneficiary under the latter's insurance policy"? Or do we state it thus: "No person convicted of the murder or voluntary manslaughter of the decedent may take as beneficiary under the latter's insurance policy"? In my view, the California courts have indicated that the latter is correct, for, as the Beck case pointed out, the public policy here is "the public policy expressed in the Probate Code."

Under that Code, of course, it is the person *convicted* who may not inherit. His *convicted* status makes him, in effect, an impermissible beneficiary. Speaking of § 258 before it was amended, and when it mentioned murder only, the court said In re Lysholm's Estate, 79 Cal.App. 2d 467, 179 P.2d 833, 834: "If there be a *conviction* of murder, then neither the murder nor his heirs have any right to the insurance money." (Emphasis add-

---

1. After a retrial of this case, and on a second appeal, 7 Cal.App.2d 604, 46 P. 2d 822, the insurance company asserted it had accomplished a rescission of the policy by refunding the premium paid for the policy to the homicidal husband. At that time, said the court, "defendant Johnson had already been convicted." No rescission could be accomplished since he "did not have at the time of the alleged rescission, as a matter of law, any interest therein." His loss of interest "as a matter of law" was obviously the result of the conviction.

ed.) In other words, in a case coming within the express terms of § 258, it is the *conviction,* and nothing else, which is the ultimate fact that counts. And if that section be imported into the statement of the California public policy which affects recovery on insurance policies, the same thing should be true here.

Suppose the situation were reversed. Suppose the district attorney had been induced to accept a plea of involuntary manslaughter, and that such was the judgment of conviction. Could it be argued that the decedent's estate, or the alternate beneficiary, could then intervene and claim the policy proceeds by proving that really and truly the manslaughter was voluntary or the killing willful? I think not. But if the theory of the majority opinion is accepted, if the proof of the character of the killing is appropriate in the civil suit on the policy, how can such a result be avoided?

Contrary to the view expressed in the opinion I think Abbey v. Lord, 168 Cal. App.2d 499, 336 P.2d 226, reinforces the opinion I have expressed. There, also, the same public policy here involved was applied in denying a husband property benefits from a joint tenancy with the wife he killed, and for which he was convicted of voluntary manslaughter. The court there used language similar to that quoted from Beck v. West Coast Life Ins. Co., supra, saying: "Probate Code Section 258 was amended in 1955, and disinherison was extended to one convicted of voluntary manslaughter. This amendment clearly establishes that the legislature does not favor the policy of giving property benefits to murderers or persons *convicted* of voluntary manslaughter." (336 P.2d at page 231) (Emphasis added.)

In short, (a) the amendment of 1955 made an important addition; (b) it extended the policy; and (c), it was a policy concerning persons "convicted" of voluntary manslaughter. I think the court has been misled by the fact that in Abbey the court recites evidence as to the manner of the killing. But no sig-

nificance can attach to that. The appellate court did not do so and rightly so, for the case discloses why the court took that evidence in the criminal case. The opinion recites: "He was charged with murder and he entered a plea of guilty of manslaughter. The court determined the same to be voluntary." That is why that evidence was taken, *not in the civil case, but on his plea of guilty in the criminal case.* As the majority opinion notes, the facts in the civil case,—the conviction—were received by way of stipulation.

I would affirm the judgment.