**JOHN ALDEN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Edna DOE, et al, Defendants.**

**Civ. A. No. 84–2327.**

United States District Court,
S.D. West Virginia,
Charleston Division.

April 16, 1987.

Shawn P. George and Stephen B. Farmer, Jackson, Kelly, Holt & O'Farrell, Charleston, W.V., for plaintiff.

Frederick F. Waugh, Norwalk, Ohio, for defendants Carol Doe Bloe, Richard Doe and Gerald Doe.

All other defendants, pro se.

## MEMORANDUM OPINION AND ORDER

HADEN, II, Chief Judge.

This is a case great in emotion and small in monetary significance.

### I. *Background*

Sheldon Doe [1] died on June 26, 1983, at his residence in Culloden, West Virginia.[2] The cause of death was a single gunshot wound to the head. At the time of his death, Mr. Doe was married to Edna Doe. It was the second marriage for both. Mr. Doe had three children by a former marriage and Mrs. Doe had ten.[3] No children were born of their union.

Suspected of causing the death of Mr. Doe, Mrs. Doe and one of her sons, John Roe, were indicted by a Cabell County jury for first-degree murder. Mrs. Doe died before her case could come to trial. On the other hand, John Roe was convicted of first-degree murder. He is currently incarcerated in the West Virginia State Penitentiary at Moundsville.

At the time of his death, John Alden Life Insurance Company had an insurance policy in effect on Mr. Doe's life for $15,-000.00. Mrs. Doe was the named beneficiary. Because of the circumstances surrounding Mr. Doe's death, the insurance company was uncertain as to whom the proceeds of the policy should be paid. Accordingly, it paid the proceeds of the policy into the registry of the Court and initiated this interpleader action. The thirteen children and Mrs. Doe have been named as Defendants. All of the Defendants, with the exception of Mrs. Doe, have answered the complaint.[4]

The Court indicated in its Order of February 26, 1987, that this action appeared to be one capable of resolution without hearing or trial. Thus, the Court established March 15, 1987, as the date for dispositive motions. Now pending before the Court is the formal motion for summary judgment of Carol Doe Bloe, Richard Doe and Gerald Doe (the Doe Defendants).[5] Defendant John Roe has moved for summary judgment, for leave to file an amended complaint and for the Plaintiff to pay all

---

1. Due to the nature of this case, the Court has decided not to use the real names of the parties.

2. These undisputed facts are taken without further attribution from the interpleader complaint and the memorandum of law submitted on behalf of Carol Doe Bloe, Richard Doe and Gerald Doe.

3. Mr. Doe's children are Carol Doe Bloe, Richard Doe and Gerald Doe. Mrs. Doe's children are Herbert Roe, Douglas Roe, William Roe, Fred Roe, John Roe, Lorraine Roe, Patricia Moe, Dorothy Croe, Frank Roe and Tolbert Roe.

4. By Order entered February 26, 1987, the Court indicated that it would treat the informal responses from William, Lorraine, Tolbert, Dorothy and Patricia as formal answers. Herbert, Fred and John have since answered.

5. The Doe Defendants appear to be the only Defendants represented by counsel. Being so represented, they obviously have been better able to present their arguments. The Court, however, has also reviewed and considered all the letters and *pro se* briefs of the other Defendants. Their lack of legal representation has not, in the Court's opinion, hindered them in making their views known to the Court.

Court costs. Also pending is the Plaintiff's motion to dismiss and for costs and attorney fees. The Court turns first to the dispositive issues raised by the motion of the Doe Defendants.

## II. *Discussion*

The argument made by the Doe Defendants is straightforward. They have produced evidence that Mrs. Doe was involved in the murder of Mr. Doe. Although she is named as the beneficiary of the life insurance policy, the Doe Defendants argue that she should not be allowed to profit by her own wrong. Because Mrs. Doe is deceased, the Doe Defendants further argue that her natural children should not be allowed to take through her pursuant to the laws of distribution.

The Doe Defendants concede that *W. Va. Code*, § 42–4–2 is not applicable by its terms to this situation. That statute provides as follows:

> "No person who has been convicted of feloniously killing another, or of conspiracy in the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by dissent and distribution, or by will, or by any policy or certificate of insurance, or otherwise; but the money or the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the one killed or conspired against, unless by some rule of law or equity the money or the property would pass to some other person or persons."

It is clear that the applicability of the above statute is conditioned upon a conviction. Although indicted, Mrs. Doe was not convicted for the murder of Mr. Doe. Hence, the statute does not control.

The Doe Defendants argue, however, that the statute is not exclusive. In other words, they contend that the statute supplements rather than supplants the common law. The common law principle upon which they rely is that a person may not profit by his own wrong. Hence, they urge the proposition that Mrs. Doe, though never convicted, may not take under the policy because of her wrongdoing.

The statute quoted above does not address two possibilities: nonfelonious conviction and no conviction. In this case there was no conviction. In *Metropolitan Life Insurance Co. v. Hill*, 115 W.Va. 515, 177 S.E. 188 (1934), there was a conviction, but it was for involuntary manslaughter. The *Hill* court conceded that the statute did not bar the convicted person from receiving the proceeds of the policy on the life of the victim. Nevertheless, the Court held "that the statute was designed to raise the felony conviction as but another bar to recovery in a civil action, and that the statute gives no implication that a lesser verdict would furnish basis for such a recovery." 115 W.Va. at 519, 177 S.E. 188. The *Hill* court concluded that the legislature had not intended to change the common law rule barring a beneficiary who intentionally caused the death of the insured, whether felonious or not.

A logical extension of the *Hill* decision is the conclusion that the lack of a conviction does not necessarily allow the beneficiary to recover the policy proceeds either. One commentator, in discussing a South Carolina statute similar to the West Virginia statute, had the following to say:

> "Analogous to the nonfelonious killing is the problem of whether the statute requires the conviction of the beneficiary. This question is most likely to arise where the beneficiary murders the insured and then commits suicide. Such a factual situation was faced by the South Carolina court in *Smith v. Todd* [155 S.C. 323, 152 S.E. 506 (1930)]. It was held that the statute merely raised the conviction of murder as a conclusive bar to the beneficiary's right to recover. The statute did not abrogate the common law principle that the beneficiary could be denied recovery on grounds of not being allowed to profit from his wrong, notwithstanding the fact that no conviction had been obtained...."

Note, *Recovery of Insurance When Beneficiary Causes Death of Insured*, 57 W.Va. Law Review 85, 86 (1955).

█ Based on the foregoing, the Court decides that the lack of a conviction is not conclusive. Mrs. Doe may be barred from collecting the policy proceeds if she intentionally played a part in the unlawful killing of Mr. Doe. Moreover, the standard in this civil action is not proof beyond a reasonable doubt, as in a criminal case; proof by a preponderance of the evidence is sufficient. The Court does not sit to decide the guilt of Mrs. Doe per se, but must only decide her entitlement to the insurance proceeds. Admittedly, the central issue is her culpability in the death of Mr. Doe.

█ The Court is asked to decide this case on the facts of record. Before the Court are two affidavits: the affidavit of Charles M. Hatcher, Jr. and the affidavit of John Roe. Mr. Hatcher is the Assistant Prosecuting Attorney of Cabell County, West Virginia, who successfully prosecuted the first-degree murder indictment against John Roe. His affidavit is offered in support of the Doe Defendants' summary judgment motion. Mr. Hatcher testifies substantially as follows: Sheldon Doe, Edna Doe and John Roe were drinking alcoholic beverages together at the family residence. An argument ensued. During the course of the argument John Roe shot his step-father. The shooting occurred in the living room. Roe and Edna Doe then moved the body into a bedroom. They agreed that they would tell the authorities that Mr. Doe had committed suicide.[6] The evidence at Roe's trial showed that an ambulance was then called. Shortly thereafter, however, Mr. Doe, lying in the bed where he had been placed, was observed to move. Mrs. Doe then called the ambulance service and stated that a mistake had been made. She told them not to come. Four hours later the ambulance service was

called again. This call was placed after it was ascertained that Mr. Doe was dead.

Hatcher, in summarizing, states that the evidence at trial established that Mrs. Doe cleaned up the blood in the room where Mr. Doe was shot, helped carry him to the bed in the bedroom, told the paramedics that a mistake had been made in the initial request for ambulance service and permitted Mr. Doe to die on the bed in the bedroom before requesting ambulance service.

*Rule* 56 of the Federal Rules of Civil Procedure sets forth a procedure which allows judgment to be entered without a trial. For the benefit of the unrepresented, the Court would explain that a trial is for the resolution of disputed facts. When there are no disputed facts, there is no need for a trial. The Court (i.e, the Judge) may apply the law to the undisputed facts to arrive at a correct result. *Rule* 56 provides that a party who believes the facts to be undisputed may move for summary judgment, setting forth the facts which he claims to be undisputed. Once that is done, the burden then falls upon the non-moving party, or parties as in this case, to bring to the Court's attention other facts or contradictory facts which make trial a necessity.

The testimony of Hatcher, presented by affidavit, clearly shows the involvement of Mrs. Doe in the homicide. On the other hand, the affidavit of John Roe merely states that Mrs. Doe was not convicted of the offense for which she was indicted. This fact is restated in the letters and responses submitted by other children of Mrs. Doe. As the Court discussed above, however, a conviction is not necessary for the common law rule to work its bar. The Court accepts that Mrs. Doe was not convicted. The burden of the Defendants is to set forth specific facts in support of their bald allegations that Mrs. Doe was not involved in the murder of Mr. Doe.[7] This they have failed to do.

---

**6.** Incredibly, the conspirators forgot to put the murder weapon in the bedroom where Mr. Doe was supposed to have committed suicide. The record does not reflect if it was this piece of evidence which inspired a homicide investigation.

**7.** *Rule* 56(e) provides in pertinent part as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his

The conclusion that Mrs. Doe is not entitled to the policy proceeds does not end the inquiry. As has been mentioned throughout, Mrs. Doe is deceased. She leaves ten natural children as descendents. The question is whether they can receive that which the law would not allow Mrs. Doe to receive were she alive. The Court concludes that they cannot.

The controlling principle is set forth in 44 Am.Jur.2d, *Insurance,* § 1717:

> "The general rule that a beneficiary who feloniously kills the insured cannot take under the policy also precludes one claiming through or under him from likewise taking under the policy...."

This principle is consistent with that reflected in *W. Va. Code,* § 42–4–2: "The money ... shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the one killed or conspired against...." [8] Of course, Mrs. Doe not having been convicted of the offense charged, that statute does not control in the strict sense. Nevertheless, the Court has already determined that the statute did not supplant the broader common law rule. In that the statute and the common law rule are consistent in their purpose, the Court also determines that the common law's treatment of the descendents would be similar. Other courts are in accord. *See Meyer v. Johnson,* 115 Cal.App. 646, 2 P.2d 456 (1931); *Schmidt v. Northern Life Ass'n.,* 112 Iowa 41, 83 N.W. 800 (1900).

The children of Edna Doe have put forth reasons why the insurance proceeds should be evenly divided between all the children. They state that Mrs. Doe paid the premiums on the insurance policy. Also, they report that Mr. Doe was not welcome in the homes of his natural children. These points, obviously presented with an eye toward equity, are immaterial to the legal issues at hand. The inevitable conclusion that Mrs. Doe was involved in the intentional, unlawful killing of Mr. Doe sweeps aside the considerations urged by Mrs. Doe's children.

The Court thus concludes that the Doe Defendants are the appropriate recipients of the policy proceeds. Consistent with this holding, the Court denies the motions of John Roe.

There remains the Plaintiff insurance company's motion to dismiss and for costs and attorney fees. The motion to dismiss is now moot. In support of its motion for costs and fees, the Plaintiff avers that such were incurred "in its efforts to aid the Court in making factual and legal determinations as to the facts and circumstances surrounding the death of Sheldon [Doe], the relationship of the various Defendants to Sheldon [Doe], and the location of the Defendants." It represents that the amount of the attorney fees is $1,051.25 and that the amount of the costs is $94.19. The Court has examined the Plaintiff's documentation of the fees and costs, and finds same to be in order. The Court also finds that the fees and costs were reasonably incurred and that the Plaintiff is entitled to reimbursement for same. *Murphy v. Travelers Ins. Co.,* 534 F.2d 1155 (5th Cir.1976) (court has discretion to award attorney fees in interpleader action).

The Court believes that the interest which has accrued on the principal paid into Court by the Plaintiff is a suitable fund from which to reimburse the Plaintiff for its fees and costs. Therefore, the Court awards the Plaintiff its fees and costs in the amount requested only insofar as that amount does not exceed the interest available.

### III. *Conclusion*

This is not an easy case. The Court can only assume that in some quarters this decision will be greeted with a measure of bitterness. The Court is also aware of the shadow which is cast by this decision. It is

---

response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

8. By the terms of this statute, if Mrs. Doe had been convicted, the policy proceeds would have gone to Mr. Doe's estate and then to his natural children. *See e.g.,* 44 Am.Jur.2d, *Insurance,* § 1718.

a decision, however, which had to be made. And it is a decision which the law and the facts compel notwithstanding the wounds which may be reopened. With this in mind, the Court hopes that a sad chapter in the lives of those involved can now be closed.

The Court grants the motion of the Doe Defendants for summary judgment and will enter judgment in their favor. The Court also grants the Plaintiff's motion for an award of costs and attorney fees. Accordingly, the Clerk is directed to disburse the $15,000.00 principal to the order of Carol Doe Bloe, Richard Doe and Gerald Doe. The Clerk is further directed to disburse to the Plaintiff from the accrued interest the sum of $1,145.44. If the accrued interest is less than that sum, then the entire amount of the interest shall be paid over to the Plaintiff. Otherwise, the remaining amount of interest, after payment to the Plaintiff, shall be disbursed to Carol Doe Bloe, Richard Doe and Gerald Doe.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record and the *pro se* Defendants at their last known address.