CASE 37.—ACTION BY ELLA LEACH AND OTHERS AGAINST THE OWENSBORO CITY RAILWAY COMPANY AND ANOTHER.—February 23, 1910.

## Leach, &c. v. Owensboro City Ry Co., &c.

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

From a judgment for defendants, plaintiffs appeal.—Reversed.

1. Executors and Administrators—Order Appointing Administrator—Validity.—An order appointing an administrator before the second term of the county court after the death of the intestate, though erroneous because prematurely entered, is not void.

2. Executors and Administrators—Irregular Appointment—Effect on Powers—Settlement of Claims.—Under Ky. St. section 3882 authorizing a personal representative to compromise a claim for damages for decedent's death, an administrator, acting under an order of appointment prematurely entered in the county court, may, in good faith, compromise the claim for decedent's death.

3. Executors and Administrators—Powers of Administrator—Settlement of Claims.—Where the administrator, in fraud of the rights of the beneficiaries of a decedent's estate, and in collusion with the adverse party, settled a claim for the negligent death of decedent, so as to defeat the action of

the beneficiaries, the settlement could, at the instance of the latter, be opened, and the original case tried on its merits.

4. Appeal and Error—Direction of Verdict—Review.—The court, in reviewing the ruling of the trial court directing a verdict for defendants at the close of the evidence in a suit attacking an administrator's settlement of a claim for the negligent death of decedent, must consider the evidence in its strongest aspect for plaintiff; and, where the evidence showed a probable claim for substantial damages for decedent's death, and that the administrator and the party liable for the death did not act in good faith in the settlement, the case must go to the jury.

5. Street Railroads—Operation of Cars—Duty of Motorman.— A motorman must keep a lookout ahead for pedestrians using the street, so as to give them timely warning of the car's approach, and must have the car under such control that he can stop it, if it becomes apparent that pedestrians are unaware of its approach, or cannot leave the track in time to escape injury.

6. Street Railroads—Use of Streets—Right of Cars and Pedestrians.—Though street cars are rightfully in the streets and have a right of way, pedestrians may also rightfully use the streets, and until they are aware of the approach of a car, they may walk across the tracks.

7. Street Railroads—Operation of Cars—Negligence.—In an action against a street railway for the death of a pedestrian struck by a car, evidence that the car was running at 15 miles an hour, that the motorman was not ringing the gong, that he left the brake and went to the side of the car and looked back at some boys attempting to jump on the car, and that he did not turn so that he could see decedent until within a few feet of her, when he rang the gong and tried to stop the car, but could not, established a prima facie case of negligence.

8. Street Railroads—Injuries to Pedestrians—Contributory Negligence.—Whether a pedestrian killed by a street car was guilty of contributory negligence in going on the track without looking to see whether a car was approaching held, under the evidence, for the jury.

9. Executors and Administrators—Settlement of Claims— Fraud—Evidence.—In a suit by the children of a decedent against the administrator and a street railway, to set aside a settlement of a claim for the negligent death of decedent struck by a car, evidence that the administrator,

without the consent of the children, and on consultation with only one of them, who assented to a settlement if the other children agreed to it, and without consulting his counsel, went to the street railway, and, with its lawyer or officer, went to the county court and furnished bond, settled the claim for a pittance, together with the fact that he was represented in the case by the street railway's counsel, showed a fraudulent purpose to defeat the claim, authorizing the submission to the jury of the issue of fraud.

10. Executors and Administrators—Settlement of Claims—Fraud—Evidence.—A settlement by an administrator for $250 for the negligent death of his intestate, who was, at the time of her death, between 45 and 50 years old, in good health, able to perform manual labor, and was doing so as a wage-earner, is grossly inadequate, and is properly considered on the issue whether the settlement was in fraud of the beneficiaries of the intestate.


WATKINS & BROOKHEAD, J. R. HAYS and SWEENEY, ELLIS & SWEENEY for appellants.

LITTLE & SLACK and MILLER & TODD for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Clara Gardner, a widow, was run over and killed by one of appellee's electric street cars in Owensboro, in March, 1908. William Alexander, her brother, was on his motion appointed administrator of her estate on April 10, 1908, and on that day settled with the railway company for her death by accepting $250 in full satisfaction. He executed a receipt in full settlement of the compromise. The children of Mrs. Gardner, some of whom were infants, upon learning of the settlement, attempted to repudiate the administrator's act, and brought this suit against the railway company and the administrator, charging the negligent killing of decedent, and alleging that the administrator and the railway

company had fraudulently conspired to settle the claim of the estate for less than it was entitled to recover, and that in pursuance of the conspiracy the administrator refused to bring this suit for damages accrued to the estate by the wrongful act of his co-defendant. The answer of the railway company denied its negligence, pleaded the contributory negligence, of the decedent, and relied, too, upon the compromise settlement by the administrator. At the close of the evidence the circuit court directed a verdict for the defendants.

Appellants, the children of the decedent, claimed that the order appointing Alexander administrator before the second term of county court after the death of the intestate was void. Though it may have been erroneous, it was not void. Buckner v. L. & N. R. R. Co., 120 Ky. 600, 87 S. W. 777, 27 Ky. Law Rep. 1009; McFarland's Admr v. L. & N. R. R. Co., 130 Ky. 172, 113 S. W. 82; Spayd v. Brown, 102 S. W. 823, 31 Ky. Law Rep. 438. Under the statute the acting administrator had the lawful right to compromise and settle the claim (sections 3848, 3882, Ky. St. [Russell's St. secs 3878, 3913]), although the order appointing the administrator had been prematurely entered in the county court. McFarland's Admr v. L. & N. R. R. Co., supra. In McLemore v. Sebree Coal & Mining Co., 121 Ky., 53, 88 S. W. 1062, 28 Ky. Law Rep. 25, it was held that, if the personal representative of one killed by the negligence of another refused to bring action against the wrongdoer by collusion, the beneficiaries of the decedent, who under statute are the widow and heirs at law of the decedent (section 6, Ky. St. [Russell's St. sec. 11].), might maintain the action nevertheless, making the administrator a party defendant. Un-

less there was a compromise of the claim in this case in good faith, then there was not a settlement of it at all. If the administrator, in fraud of the rights of the beneficiaries of the estate of which he had charge, and in collusion with the adverse party, settled the claim against the railway company so as to defeat the action of the real beneficiaries, it may be opened up at the instance of the latter, and the original case tried on its merits. Testing the correctness of the trial court's ruling in giving the peremptory instruction, the evidence for the plaintiffs in its strongest aspect must be considered. If it showed (1) a probable claim against the railway for substantial damages for the destruction of decedent's power to earn money, and (2) that the administrator and the railway company acted not in good faith in the settlement of it, then the case ought to have gone to the jury.

The place of the accident was on Breckinridge street in Owensboro, in a part of the town well built up. Decedent, about 6 o'clock in the afternoon, was attempting to cross the street along which the street car track was located. She wore a sunbonnet, and was slightly hard of hearing. She approached the car track at an angle to cross it, her head inclined, and did not look around. The street car was going in on a straight line at good speed; one or two witnesses placing it as high as 15 miles an hour. Some of the witnesses say that the motorman was not ringing the gong on the car. One witness testified that the motorman had left the brake, going to the side of the car, and was looking back at some boys who were attempting to jump onto the car to steal a ride. He did not turn so that he could see Mrs. Gardner until his car was within a few feet of her,

when he rang the gong and tried to stop the car. But the momentum was such that it struck decedent and ran over her before it could be stopped. The duty of the motorman was to keep a lookout ahead for pedestrians and others using the street, so as to give them timely warning of the car's approach, and to have the car under such control that he could stop it if it became apparent that those on the track were unaware of its approach, or could not leave the track in time to escape injury. While the street cars were rightfully on the streets, and have right of way, yet pedestrians are also rightfully using the streets, and until aware of the approach of a car may walk across the car tracks laid upon the street. Their presence must be anticipated at any time or place, and it is the duty of those operating the street cars to keep a lookout ahead for such persons, and to so run and control the cars so as not to injure people crossing the tracks. The act of the motorman in failing to keep such lookout was culpable negligence, if he did fail. Plaintiff's evidence showed, prima facie, a case of negligence against the street car company. Whether decedent was guilty of contributory negligence in going upon the tracks without looking to see whether a car was coming was upon the facts for the jury.

Alexander had employed an attorney to assist in looking up the evidence in the case, and had discovered witnesses who told them of the facts substantially as related on the trial. He had not then qualified as administrator, because there was some difficulty in finding acceptable surety on his bond. Without the consent of the beneficiaries, without consulting but one of them, and then in spite of the assent which she gave (which was to settle "if the

others agreed to it''), without consulting his counsel, he went to the street car company, and with a lawyer or officer of the company went to the county cour: and furnished bond, settled the claim for a pittance, and now appears in the case, represented by the street railway company's counsel, endeavoring to defeat the claim of his nephew and nieces. These are all circumstances which are evidence of a fraudulent purpose to defeat the claim; that he and the railway company had attempted to make a preferential settlement in behalf of the railway company. In Hunter v. Owens, 9 S. W. 717, 10 Ky Law Rep. 651, it is said: ''Gross inadequacy of price is always a badge of fraud, and sometimes when the disproportion between the value and the price given is very great the chancellor may, from that fact alone, infer fraud.'' Mrs. Gardner was aged between 45 and 50 years, was in good health, able to perform manual labor, and was doing so as a wage-earner. The inadequacy of the price paid is grossly disproportioned to the earning value of the remainder of her life. Whether Alexander was ignorant of that fact (and it is hard to believe he was), it is more than probable the railway company was not. The attendant circumstances indicated that the settlement was not fair, and were enough, to say the least of them, to have warranted their submission to the jury to say whether the settlement was fraudulently entered into.

Judgment reversed, and cause remanded for a new trial not inconsistent herewith.