BOSLEY, ADMX., *v.* HAWKINS ET AL.

(No. 31412—Decided April 4, 1985.)

Court of Common Pleas of
Lorain County, Probate Division.

*Eric R. Severs,* for plaintiff.
*Jack W. Bradley,* for defendant
Lora Hawkins.
*Gerald E. Strait,* for defendant
Diana Hawkins.
*Beulah Hawkins, pro se.*

CORTS, J. This court is asked to
determine heirship pursuant to a complaint filed by the Administratrix of the

Estate of William D. Hawkins, deceased, in which the issue presented is:

Are either, both, or neither of two daughters of the decedent who are confessed and acknowledged murderers of their father, the decedent, eligible to in any way benefit by his death?[1]

The case was heard on a "Stipulation and Journal Entry" presented by the parties, *i.e.,* the estate and the two daughters; and a "Journal Entry" of the Court of Common Pleas, Juvenile Division, case No. J-28258, *In re Diane Hawkins, Alleged Delinquent Child*; arguments and briefs.

The "Stipulation and Journal Entry" and "Journal Entry" of the Court of Common Pleas, Juvenile Division, are reproduced below:

"Pursuant to the former order of this Court, this matter came on for Pre-Trial Conference on April 30, 1984. Present before the Court were Eric R. Severs, Attorney for the Plaintiff, Administratrix of the Estate of William D. Hawkins; Jack W. Bradley, Attorney and Guardian-Ad-Litem for Defendant, Lora Hawkins, one (1) of two (2) daughters of the decedent; Gerald E. Strait, Attorney and Guardian-Ad-Litem for Defendant, Diana Hawkins, a minor, the other daughter of the decedent; and Michael D. Tully, Attorney for Defendant, Beulah G. Hawkins, natural mother of the decedent.

"The parties hereto hereby stipulate as follows:

"1. That the Defendant, Lora Hawkins, on November 17, 1982, did enter a plea of Guilty to the charge of Murder, pursuant to Section 2903.02 of the *Ohio Revised Code*, in adult Criminal Court, Lorain County, Case No. 26617.

---

[1] The prayer of the complaint is: "Wherefore, Plaintiff demands the Court determin [*sic*] the heirs and distributees concerning said Estate and the respective shares

and interests of those so determined to *inherit*." (Emphasis added.) The case is being decided pursuant to the provisions of the statute under which this case is brought, R.C. 2105.19, the language of which is "benefit by the death" rather than "inherit."

"2. That at the time of said plea, Lora Hawkins, was a minor, but that her case had been transferred by the Juvenile Court Judge to the adult general criminal division where she would have stood trial as an adult had she not so pled.

"3. That at the time of death of William D. Hawkins, decedent herein, Lora Hawkins was a minor, but that she is now over the age of eighteen (18) years.

"4. That the Defendant, Diana Hawkins, on November 15, 1982, after trial was adjudicated a delinquent child in Lorain County Juvenile Court. (Exhibit 'A' attached.)

"5. That at the time of death of William D. Hawkins, decedent herein, Diana Hawkins was, and still is, a minor.

"6. That the Judgments in Lorain County Criminal Case No. 26617 and Lorain County Juvenile Court Case No. J-28258, as set forth above, have not been reversed, or modified, and are final Judgments.

"7. That the victim of the acts committed by Defendant, Lora Hawkins, and Defendant, Diana Hawkins, as set forth in said cases, was their natural father, William D. Hawkins, decedent herein.

"8. The parties hereto hereby further agree that because of the stipulations herein, an evidentiary hearing is not necessary and the parties hereby waive such evidentiary hearing.

"9. That the parties will address the following issues in written briefs:

"(a) Is Defendant, Lora Hawkins, entitled to inherit herein?

"(b) Is Defendant, Diana Hawkins, entitled to inherit herein?

"(c) Are Defendants, Lora Hawkins, and Defendant, Diana Hawkins, or either one of them, entitled to the year's allowance, as set out by Section 2117.20 of the *Ohio Revised Code*?

"10. That Defendant, Lora Hawkins, and Defendant, Diana Hawkins, will file their briefs on or before July 30, 1984; that Defendant, Beulah Hawkins, will file her brief on or before August 10, 1984; and that a reply brief, if desired, may be filed by Defendant, Lora Hawkins, and Defendant, Diana Hawkins, and the Administratrix, on or before August 24, 1984.

"/s/ Eric R. Severs

"Eric R. Severs
"Attorney for Ernestine J. Bosley,
"Administratrix of the Estate of
"William D. Hawkins, Deceased

"/s/ Jack W. Bradley

"Jack W. Bradley
"Guardian-Ad-Litem and
    "Attorney for Defendant,
    "Lora Hawkins

"/s/ Gerald E. Strait

"Gerald E. Strait
"Guardian-Ad-Litem and
    "Attorney for Defendant,
    "Diana Hawkins

"/s/ Beulah G. Hawkins

"Beulah G. Hawkins

"JOURNAL ENTRY
"The foregoing Stipulation and Agreement approved this 27th day of May, 1984. It is so ORDERED.

"/s/ Robert J. Corts"

"JUDGE"

"IN THE COURT OF
"COMMON PLEAS
"JUVENILE DIVISION
"LORAIN COUNTY, OHIO
"In the matter of CASE NO. J-3-28258
"DIANA HAWKINS
"Alleged Delinquent Child
        "JOURNAL ENTRY

"This case came on for hearing upon the complaint filed herein and as amended. All evidence being presented, the Court on this 6th day of October, 1982, hereby makes the following findings:

"1) That the minor child, Diana Hawkins, born April 9, 1968, was brought before this Court represented by counsel. That all persons interested are now properly before the Court and all writs heretofore issued herein have been served according to law.

"2) That Diana Hawkins is a delinquent child by reason of having committed acts which if committed by an adult would constitute Aggravated Homicide, R.C. 2903.01(A); Aggravated Arson, R.C. 2909.02(A)(2); and Felonious Assault, R.C. 2903.11, all felonies and all as alleged in Counts 1, 2, and 3 of the complaint. That Counts 4 and 5 are dismissed as lesser included offenses.

"It is therefore ordered that Diana Hawkins be committed to the legal custody of the Department of Youth Services for institutionalization in a secure facility until the child's attainment of the age of twenty-one years in connection with Count 1 and for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed the child's attainment of the age of twenty-one years in connection with Counts 2 and 3.

"/s/ Henry T. Weber

"JUDGE"

## I

The law governing this situation is found presently in R.C. 2105.19 which is a part of R.C. Chapter 2105, the Statute of Descent and Distribution. The law has had an interesting history in Ohio and other states.

One of the earliest cases dealing with this problem was that of *Riggs* v. *Palmer* (1889), 115 N.Y. 506, 22 N.E. 188. The state of New York at the time had a statute of descent and distribution, but no statute which provided that a murderer could not participate in the proceeds of the estate of his victim. The court proclaimed a general philosophical policy that no one should profit by his or her wrong, *"nullus commodum capere* *potest de injuria sua propria,"* and held that a person who was a murderer could not participate in the distribution of his victim's estate, this despite the fact that there was no statutory authority for such position.

An opposite conclusion had been reached the year before in the North Carolina case, *Owens* v. *Owens* (1888), 100 N.C. 240, 6 S.E. 794. There, the court held that because there was no statute limiting the application of the statute of descent and distribution, there was no authority for the court to proclaim that a murderer could not inherit from his victim, and that court found the wrongdoer could inherit from his victim.

Thereafter the states began enacting laws to govern the situation. Ohio enacted its first statute on the subject, G.C. 10503-17, which became effective on January 1, 1932:

"No person finally *adjudged guilty,* either as principal or accessory, of murder in the first or second degree, shall be *entitled to inherit or take any part* of the real or personal estate of the person killed, whether under the provisions of this act relating to intestate succession, or as devisee or legatee, or otherwise under the will of such person; nor shall such person inherit or take any real or personal estate of any other person as to which such homicide terminated an intermediate estate, or hastened the time of enjoyment. With respect to inheritance from or participation under the will of the person killed, the person so finally adjudged guilty of murder in the first or second degree shall be considered as though he had preceded in death the person killed. Such adjudication shall not affect the rights of an innocent purchaser of any such property if the purchase was made prior to the time the murderer was finally adjudged guilty. A pardon shall restore all such rights, but shall not affect the rights of

14

an innocent purchaser of any such property." (Emphasis added.)

It is pointed out that, at that time, the law dealt only with the right of the one found "guilty" of murder "to inherit or take any part of the real or personal estate of the person killed."

The section was changed with the adoption of the Ohio Revised Code which replaced the Ohio General Code. In the changeover, while it appears no change was made by a separate enactment of an amendment by the Ohio General Assembly, the section was changed in some respects so as to provide as follows and the section number was changed to R.C. 2105.19:

"No person finally *adjudged guilty*, either as principal or accessory, of murder in the first or second degree *shall inherit or take any part of the real or personal estate of the person killed,* whether under sections 2105.01 to 2105.21, inclusive, of the Revised Code, or under the will of such person; nor shall such person inherit or take any real or personal estate of any other person as to which such homicide terminated an intermediate estate or hastened the time of enjoyment. With respect to inheritance from or participation under the will of the person killed, such person shall be considered as though he had preceded in death the person killed. Such adjudication shall not affect the rights of an innocent purchaser of such property if the purchase was made prior to the time such person was finally adjudged guilty. A pardon shall restore all such rights, but shall not affect the rights of an innocent purchaser of such property." (Emphasis added.)

Still, the statute dealt with a "guilty" person's right to "inherit" or take any part of the "real or personal estate" of the person killed.

In 1975 the statute was amended in three respects: (1) the offenses mentioned were changed from *"murder in the first or second degree,"* to offenses contained in *"section 2903.01, 2903.02, or 2903.03 of the Revised Code";* (2) significantly, the law was changed from one applying to a person who was adjudged *"guilty"* of these offenses, to apply to one who was *"convicted"* or pleads guilty to the offenses; and (3) the sanction was changed from one prohibiting a person to *"inherit or take any part of the real or personal estate of the person killed,"* to one providing that no person *"shall in any way benefit by the death."*

R.C. 2105.19 is as follows:

"(A) No person who is *convicted* of or pleads guilty to a violation of or complicity in the violation of section 2903.01, 2903.02, or 2903.03 of the Revised Code or of an existing or former law of any other state, the United States, or a foreign nation, substantially equivalent to a violation of or complicity in the violation of any of these sections *shall in any way benefit by the death.* All property of the decedent, and all money, insurance proceeds, or other property or benefits payable or distributable in respect of the decedent's death, shall pass or be paid or distributed as if the guilty person had predeceased the decedent.

"(B) A person prohibited by division (A) of this section from benefiting by the death of another is a constructive trustee for the benefit of those entitled to any property or benefit that the person has obtained, or over which he has exerted control, because of the decedent's death. A person who purchases any such property or benefit from the constructive trustee, for value, in good faith, and without notice of the constructive trustee's disability under division (A) of this section, acquires good title, but the constructive trustee is accountable to the beneficiaries for the proceeds or value of the property or benefit." (Emphasis added.)

It can be said the state of Ohio has, by the passage of these statutes,

adopted the policy in statutory form first enunciated in the New York case of *Riggs* v. *Palmer, supra,* that one should not profit from his or her own wrong.

## II

Concurrent with the development of this public policy has been the development of another public policy that minors, or infants, or children should not be subject to the same laws and penalties as are adults. That policy is stated as follows:

"The purpose of juvenile court legislation is to provide for the disposition of delinquent, dependent, neglected, and abandoned children by providing a complete scheme for treatment thereof including the creation of a juvenile court which will investigate and try to rehabilitate minors," 47 American Jurisprudence 2d (1969) 986, Section 1; and

"* * * it is said to be contrary to the spirit of modern penology to impose on juvenile offenders, whose need is reclamation and reform rather than punishment, the penalties intended for adults, and as a result of a growing sentiment in that direction, in many jurisdictions, special laws have been enacted for the juvenile offender, whereby an infant who has violated the criminal law is treated merely as a delinquent, and not as a criminal," 43 Corpus Juris Secundum (1978) 515, Section 196.

That policy can be concluded to be that minors should not be subject to the criminal penalties for violating a law because it is in the public interest to rehabilitate and reclaim these persons of tender years to society as useful citizens and to do so without placing upon them the stigma of a criminal conviction. Ohio has adopted such a policy.

In this case we have a situation in which these two public policies meet in the one case. The question becomes can they both be accommodated by the court in its decision.

Recognizing that the protections afforded juveniles are for the purpose of not visiting upon them criminal penalties in the interest of providing for their reclamation and rehabilitation, a requirement that they be held to the constraints of the civil law which does not involve punishment or a criminal record would appear not to be inconsistent with that purpose. The fact that a juvenile who is guilty of an offense is subject only to punishment as a delinquent child does not mean that he has not committed an unlawful act. *State* v. *Medicine Bull* (1968), 152 Mont. 34, 445 P.2d 916, 921.

## III

This dispute resolves itself, in the final analysis, into construing the word "convicted," as used in R.C. 2105.19.

The legislative history of the statutes set forth above must be considered in this process. It has been pointed out that the first statute on this subject in the state of Ohio, G.C. 10503-17, provided that no person found "guilty" of murder shall "inherit" from a person he killed. The present statute, R.C. 2105.19, provides that no person "convicted" of the offenses of aggravated murder, aggravated arson, or voluntary manslaughter shall "benefit" by the death of the one killed. These changes in the statute, *i.e.,* "guilty" to "convicted," and "inherit" to "benefit," represent significant changes and it is presumed that the legislature had a purpose in so amending the law.

The following excerpt from 2A Sutherland, Statutory Construction (4 Ed. 1984) 40-41, Section 45.09, is pertinent in this regard:

"Legislative purpose may also be a valuable guide to decision in cases when the effect of a statute on the situation at hand is unclear either because the situation was unforeseen at the time when the act was passed, or the statutory articulation of the rule or policy is so in-

complete that it cannot clearly be said to speak to the situation in issue. Courts cannot avoid the problem by refusing to apply the statute in such a case on the ground that the legislature has not yet extended the statute to make it clearly apply, because a ruling of that nature would itself amount to an interpretation that the statute is inapplicable.

"There is support for the view that a statute should not be confined in its operation to only what was within the contemplation of the legislature which enacted it, but that, instead, the words of a statute should be regarded as embodying a delegation of authority to exercise responsible creative judgment in relating the statutory concept, spirit, purpose, or policy to changing needs of society."

A further discourse on the subject of statutory construction appears in Maki & Kaplan, Elmer's Case Revisited: The Problem of the Murdering Heir (1980), 41 Ohio St. L.J. 905[2]:

"In Elmer's case, the Court is not construing a constitution and, therefore, must literally apply applicable statutory law. No one has ever suggested, however, that courts must bury their heads in sand rather than use common sense to construe statutes. The *Owens* court presumed that without specific judicial or legislative authority, the Court could not provide relief. But another presumption was ignored — the presumption against injustice. One presumption used in statutory construction is to presume that the legislature did not intend to violate a settled principle of natural justice. Furthermore, in regard to the general principle of avoiding injustice and absurdity, any statutory construction that enabled a person to profit by his own wrong should most certainly be rejected. Thus, if a statute should not be construed to allow a person to profit

from his wrongdoing, a murderer should not profit from his or her wrongful act." *Id.* at 909-910.

Another principle of statutory construction ignored by *Owens* and similar cases is a court's duty to ascertain the meaning and intention of the legislature.

It is urged upon this court that R.C. 2105.19 requires that this court determine that the sister who was tried as an adult and found guilty of aggravated murder be found ineligible to benefit from her murdered father's estate, and that the other sister tried by the juvenile court, and found to be a delinquent child, be found entitled to benefit therefrom. While this result in itself offends the sensibilities of the court, it is a further offense to realize that if this disposition of the matter is made, not only will the one receive her part of the estate, but she will receive her sister's share as well, doubling her share, solely as a result of her participation with her sister in her father's murder.

No one can logically contend that the legislature in passing this law, if it had foreseen such a case as this arising, intended this result. It can more cogently be argued that the legislature would have deprecated such a result as this, and therefore did not intend it.

The rationale of this position is well stated in *In re Sengillo's Estate* (1954), 206 Misc. 751, 753, 134 N.Y.Supp. 2d 800, 802:

"It has been contended that to deprive this boy of his distributive share is to impose an additional penalty. To hold that he cannot take his share is no additional penalty or punishment since he had no property, the property in question that of Corrado Sengillo [the father]. On December 5, 1953, deceased had a prospect of a future life, the duration or length of which was uncertain, and this same situation was true as to Robert Sengillo [the son]. The duration of the uncertainty of the future life of the father was that day made certain by

---

[2] "Elmer" is the name of the defendant in *Riggs* v. *Palmer, supra.*

the act of Robert Sengillo and by the same act he cannot profit, since to hold that he takes his share as a distributee, would be to reward him for shooting his father."

Returning to a consideration of the meaning of the word "convicted," the Ohio case of *Slothower* v. *Dayton Power & Light Co.* (App. 1956), 75 Ohio Law Abs. 313, is important. The court in that case at 316 stated:

"While it is true that the word 'conviction' as used in criminal proceedings, and in statutes relative to criminal procedure, refers to a judgment of guilty, the word carries another connotation. Thus it is said in Vol. 18, C.J.S., page 97, that while 'the word is intimately bound up with the criminal law, and it has been said that in criminal procedure the word is of equivocal meaning, having both a popular, and a technical legal, signification, the construction not always being uniform, but depending upon an interpretation of the particular law or statute under consideration.'

"In Vol. 18, C.J.S., page 98, is found this statement:

" 'Conviction' is not necessarily restricted to criminal prosecutions, but in its most extensive sense the term signifies the giving of judgment against a defendant, and will apply to a civil as well as to a criminal action; also a condemnation. In prosecutions for violations of ordinances to recover penalties, the courts have applied the term to persons found guilty in such civil actions."

The fourth headnote which embodies a holding of the court reads as follows:

"The word, 'conviction' is not necessarily restricted to criminal prosecutions, but in its most extensive sense signifies the giving of a judgment against a defendant, and is applicable to civil as well as criminal actions."

To the same effect is the case of *State Farm Life Ins. Co.* v. *Smith* (1975),
29 Ill. App. 3d 942, 331 N.E. 2d 275, the ninth headnote of which states:

"Word 'conviction' as used in provisions of the Probate Court Act that one convicted of murder may not inherit or receive a devise or legacy from the murdered person is not necessarily restricted to criminal prosecutions; in its most extensive sense the term signifies the giving of the judgment against the defendant and applies to civil as well as a criminal action and includes a finding and judgment in a civil case."

The case of *In re Estates of Josephson* (N.D. 1980), 297 N.W. 2d 444, well states the conclusion of this court:

"[Although] [t]he purpose of the Uniform Juvenile Court Act is to prevent that minor from being treated as a criminal in the hope of rehabilitation[,] * * * [t]he Act does not authorize * * * [the court] to relieve the minor from civil disabilities that result not from his adjudication as a delinquent but from the performance of the act itself." *Id.* at 449.

## IV

This court adopts the rationale that one should not be permitted to profit by his wrongful act, and that this maxim is implicitly a part of R.C. 2105.19 as it was amended in 1975. Before that time the statute provided that no one found "guilty" on a certain type of homicide offense could "inherit" from the person killed. In 1975 the statute was changed from "guilty" to "convicted" of these types of homicide offenses, and it is submitted that the legislature thereby adopted the body of law which holds that the word "convicted" is not a term which is indigenous to the criminal law only but embraces a judgment in a civil case as well. The court finds that the judgment entry of the juvenile court in which it was stated that "Diana Hawkins is a delinquent child by reason of having committed acts which if committed by an adult would constitute Ag-

gravated Homicide, R.C. 2903.01(A); Aggravated Arson, R.C. 2909.02(A)(2); and Felonious Assault, R.C. 2903.11, all felonies and all as alleged in Counts 1, 2, and 3 of the Complaint" is a judgment entry of conviction of these offenses, and that therefore Diana Hawkins is not entitled to benefit from the estate of her murdered father. The laws of Ohio as stated in R.C. Chapter 2105, and R.C. 2105.19 in particular, are civil laws, and do not impose criminal sanctions on the person to whom they apply.

The possibility of reclamation and rehabilitation of this person will not be impeded by the decision in a civil case which does not impose criminal sanctions upon her.

With respect to the ability of Lora Hawkins to benefit from the estate of her murdered father, the court finds that having pled guilty to one of the offenses included in the statute, she is not a next of kin entitled to participate in the distribution of her father's estate.

## V

The next question for consideration is that of entitlement to allowances of these two persons who were minors at the time of the death of the decedent. R.C. 2105.19 provides that if its provisions apply to any person, then the property or benefits payable or distributable in respect to the decedent's death shall pass or be paid or distributed as if the guilty person had predeceased the decedent.

That being the case, the two daughters are not entitled to any allowances from the estate because in order to be eligible such persons must have been living at the time of the decedent's death. The ability to receive these benefits does not survive them, and since the statute provides that any benefits shall pass or be paid or distributed as if the guilty party had predeceased the decedent, no allowances are available to them. Also,

since the statute provides that no such person shall *"in any way* benefit by the death" of a murdered decedent, the court construes an allowance to be a benefit, and that such benefit is prohibited by the statute.

It might be argued that the father had the duty to support these two minor children and that upon his death that duty devolved upon his estate. This is normally the case. However, it must be remembered that the very persons to whom the duty was owed terminated his ability to do so during his lifetime by murdering him, and his estate, then, was relieved of that duty by the statutory provisions alluded to above.

*Judgment accordingly.*