403 S.E.2d 197

**Roy Lee McCLURE and Mary Frances McClure, his Wife**

v.

**Lu Ann Dotson McCLURE and Lu Ann Dotson McClure, Administratrix of the Estate of James Edward McClure, and Kansas City Life Company, Inc., a Corporation.**

**No. 19777.**

Supreme Court of Appeals of, West Virginia.

March 15, 1991.

Larry E. Losch, Summersville, for Roy Lee McClure and Mary Frances McClure.

Lee Adler, Beckley, for Lu Ann Dotson McClure.

Gary Hart Jackson & Kelly, Charleston, for Kansas City Life Co.

MILLER, Chief Justice:

Roy Lee McClure and Mary Frances McClure, his wife, appeal the dismissal of their civil action. The McClures had filed suit in the Circuit Court of Nicholas County against their daughter-in-law, Lu Ann Dotson McClure, individually and as administratrix of their son's estate. Also named in the complaint was Kansas City Life Company, Inc., which issued three life insurance policies on the plaintiffs' son, James Edward McClure, on which the defendant was named as the beneficiary. The purpose of the McClures' suit was to prevent their daughter-in-law from acting as the administratrix or inheriting from their son's estate and to preclude her from obtaining the insurance proceeds.

The gravamen of the complaint's multiple counts was that Lu Ann Dotson McClure had caused her husband's death, and, therefore, she should not administer his estate or inherit from him. In an amended complaint, a claim was added in which the circuit court was asked to remove the defendant as personal representative and to appoint the sheriff or some other qualified person to bring a wrongful death action on behalf of the decedent's surviving beneficiaries.

I.

In the circuit court, the McClures argued that their daughter-in-law should be removed as administratrix of the estate because her acts in killing her husband disqualified her. The administratrix successfully argued that such a disqualification procedure had to be initiated before the county commission where the appointment was made, relying on *State ex rel. Linger v. County Court of Upshur County*, 150 W.Va. 207, 144 S.E.2d 689 (1965). There is

no disagreement that under W.Va.Code, 44–1–4 (1923), the appointment of an administratrix is made by the county court, which is now termed county commission.[1]

In *Linger*, a petition for a writ of prohibition was brought in this Court to prevent the respondent from carrying out his duties as administrator pursuant to an order issued by the county court of Upshur County. The petition contended that the deceased's last residence was in Lewis County; therefore, the county court of Upshur County did not have jurisdiction. In Syllabus Point 2, we recognized the constitutional authority of county courts with regard to probate matters:

"Under Article VIII, Section 24 of the Constitution of this State, county courts have jurisdiction and, as courts of record, are vested with judicial powers in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, and curators, and the settlement of their accounts, and in all matters relating to apprentices."[2]

■ We explained in *Linger* that where the county court has "'jurisdiction and power to make such appointments in proper cases, and the propriety of the appointment depends upon facts to be ascertained by such court, its action is conclusively presumed to have been proper in all collateral proceedings.'" 150 W.Va. at 220, 144 S.E.2d at 698, *quoting Tomblin v. Peck*, 73 W.Va. 336, 340, 80 S.E. 450, 451 (1913). (Citations omitted).

Referring to our earlier case of *Starcher v. South Penn Oil Co.*, 81 W.Va. 587, 95 S.E. 28 (1918), we also pointed out that when an administrator is appointed and

"the record of the county [commission] showed such appointment to have been made in the regular way, … such appointment cannot be attacked collaterally[.]" 150 W.Va. at 218, 144 S.E.2d at 697. We then quoted this statement from *Starcher*, 81 W.Va. at 595, 95 S.E. at 31, about challenging an administrator's appointment: "It must be attacked in a suit brought for that purpose or by appeal from the order of his appointment[.]" 150 W.Va. at 218, 144 S.E.2d at 697. *Linger* held that the attempt to challenge the administrator's appointment by prohibition was an impermissible collateral attack.

■ In this case, the plaintiffs claimed that because of the alleged involvement of the daughter-in-law in their son's murder, she was disqualified from becoming the administratrix of his estate. However, such an attack on the qualification of the administratrix under *Linger* must be made before the appointing authority and not collaterally in the circuit court. For this reason, we find the circuit court to be correct in rejecting this portion of the plaintiffs' claim.

## II.

■ The plaintiffs also claim that the daughter-in-law is foreclosed from inheriting from her husband's estate, including the proceeds from his life insurance policies, under W.Va.Code, 42–4–2. This statute bars a person who has been convicted of feloniously killing or conspiring to kill another from taking or acquiring any property from the one killed or conspired against.[3] The daughter-in-law argues that

---

1. In 1974, Article IX, Section 9 of the West Virginia Constitution was adopted, and the county court is now designated as the county commission.

2. The powers of the county commission are now contained in Article IX, Section 11 of the West Virginia Constitution. While the county commission's probate powers are not specifically detailed, as they were under Article VIII, Section 24 of the Constitution of 1872, the legislature has lodged these powers with the county commission. *See* W.Va.Code, 44–1–1, *et seq.*

3. W.Va.Code, 42–4–2, provides:

"No person who has been convicted of feloniously killing another, or of conspiracy in the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by descent and distribution, or by will, or by any policy or certificate of insurance, or otherwise; but the money or the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the one killed or conspired against, unless by some rule of

W.Va.Code, 42–4–2, requires a conviction before the beneficiary is barred from obtaining life insurance or other benefits. The plaintiffs argue that *John Alden Life Insurance Co. v. Doe,* 658 F.Supp. 638 (S.D.W.Va.1987), is persuasive authority that a conviction is not necessary to invoke the statutory bar.

In *Doe,* both the wife and her son were indicted for first-degree murder of Mr. Doe. Before trial, the wife died. The son was convicted of first-degree murder.[4] The insurance company filed suit to have its liability under the policy determined. The federal district court relied on our earlier case of *Metropolitan Life Insurance Co. v. Hill,* 115 W.Va. 515, 177 S.E. 188 (1934), where the question was whether an involuntary manslaughter conviction met the statutory requirement of "feloniously killing another."[5] The federal district court concluded that a wife beneficiary could be barred from obtaining life insurance benefits even though she had not been convicted of killing her husband.

■ This Court in *Hill* determined that a manslaughter conviction was sufficient, because the statutory term "feloniously killing" was not intended to change the common law, which we set out in Syllabus Point 1:

"Unlawful intentional causation of the death of an insured by the beneficiary named in the insurance policy, whether felonious or not, is the test of the common-law rule barring the beneficiary from the proceeds of the policy."[6]

In reaching this conclusion, *Hill* pointed out that the basis of the common law rule was "the fundamental principle of justice that *one shall not profit by his own wrong.*" 115 W.Va. at 518, 177 S.E. at 189. (Emphasis in original). The Court also indicated that the reason for the term "conviction" in the statute was to alter the general rule earlier recognized in *Interstate Dry Goods Stores v. Williamson,* 91 W.Va. 156, 160, 112 S.E. 301, 303 (1922), that " 'the judgment in a criminal case is not proper evidence in a civil suit to prove the facts on which it is based.' " 115 W.Va. at 519, 177 S.E. at 189.

Finally, in *Hill* we determined that the statutory purpose for the term "conviction" was to make proof of a judgment of conviction for felonious killing a conclusive bar to the slayer's right to obtain property, but otherwise the common law rule was not changed.[7] This reasoning led the district court in *Doe* to hold that a conviction was not necessary because the common law rule did not require it.

---

law or equity the money or the property would pass to some other person or persons." These types of statutes are often referred to as slayer statutes. *See, e.g., In re Estate of Hoover,* 140 Ariz. 464, 682 P.2d 469 (App.1984); *In re Eliasen's Estate,* 105 Idaho 234, 668 P.2d 110 (1983); *In re Klein's Estate,* 474 Pa. 416, 378 A.2d 1182 (1977); *Cook v. Gisler,* 20 Wash.App. 677, 582 P.2d 550 (1978).

4. Doe was a fictitious name utilized by the federal court. We upheld the son's conviction in *State v. Smith,* 178 W.Va. 104, 358 S.E.2d 188 (1987).

5. Our only case since *Hill* to consider this statute was *State ex rel. Miller v. Sencindiver,* 166 W.Va. 355, 275 S.E.2d 10 (1980), which involved the question of acquiring property under a deed giving joint ownership with a right of survivorship. The wife had pleaded guilty to involuntary manslaughter of her husband. We analyzed our joint tenancy statute, as well as W.Va. Code, 42–4–2, and concluded that because neither statute contained any express language bar-

ring a joint tenant from acquiring property in such circumstances, we would defer to the legislature. "It is for the Legislature to determine whether public policy should prevent a joint tenant with survivorship from acquiring full title to property that belonged to him and his feloniously killed victim in survivorship." Syllabus Point 3, *State ex rel. Miller v. Sencindiver, supra.*

6. We agree with those courts that hold a death resulting from negligence or gross negligence will not bar recovery under a slayer statute because the common law rule requires an intentional killing. *See, e.g., Travelers Ins. Co. v. Thompson,* 163 N.W.2d 289 (Minn.1968); *Schifanelli v. Wallace,* 271 Md. 177, 315 A.2d 513 (1974).

7. Syllabus Point 3 of *Hill* provides: "Code 1931, 42–4–2, makes conviction of a felony conclusive against a beneficiary who kills the insured, but does not otherwise change the common law rule."

Because there was no conviction as to a felonious killing, the court in *Doe* required the insurance carrier to demonstrate that the wife had committed an unlawful and intentional killing. Other courts have adopted a similar rule, with which we agree. *E.g., Harper v. Prudential Ins. Co. of Am.,* 233 Kan. 358, 662 P.2d 1264 (1983); *Quick v. United Benefit Life Ins. Co.,* 287 N.C. 47, 213 S.E.2d 563 (1975); *State Mut. Life Assurance Co. of Am. v. Hampton,* 696 P.2d 1027 (Okla.1985).

A number of other jurisdictions which have slayer statutes using the term "conviction" have come to the same conclusion as suggested in *Hill* and adopted by *Doe.* Typical reasoning is found in the Ohio Supreme Court's opinion in *Shrader v. Equitable Life Assurance Society,* 20 Ohio St.3d 41, 44, 485 N.E.2d 1031, 1034 (1985):

"All that R.C. 2105.19(A) does or purports to do is to eliminate the necessity to prove that the beneficiary of a policy of life insurance committed such an act, when the beneficiary has been convicted of or has pled guilty to one of the specifically enumerated homicide offenses. There is no indication that the General Assembly or any case law intended or requires that the statute be construed to be the *exclusive* method to determine whether a person should be barred from recovering as a beneficiary under a policy of insurance on the life of a decedent alleged to have been killed by the beneficiary." (Emphasis in original).

*See also State Farm Life Ins. Co. v. Smith,* 29 Ill.App.3d 942, 331 N.E.2d 275 (1975); *Harper v. Prudential Ins. Co. of Am., supra; Quick v. United Benefit Life Ins. Co., supra; Bosley v. Hawkins,* 24 Ohio Misc.2d 11, 494 N.E.2d 460 (1985); *State Mut. Life Assurance Co. of Am. v. Hampton, supra; Smith v. Todd,* 155 S.C.

323, 152 S.E. 506 (1930); *Bounds v. Caudle,* 560 S.W.2d 925 (Tex.1977). *See generally* Annot., 27 A.L.R.3d 794 (1969 & Supp. 1990).[8]

■ Consequently, we conclude that W.Va.Code, 42–4–2, is designed to permit proof of a judgment of conviction for felonious killing to bar the slayer from obtaining property or life insurance proceeds from the person killed. Where there is no such conviction, then evidence of an unlawful and intentional killing must be shown in a civil action.[9]

In such a civil action, most jurisdictions require the person seeking to bar the beneficiary to prove by a preponderance of the evidence that an unlawful and intentional killing occurred. *See Sargent's Estate v. Benton State Bank,* 279 Ark. 402, 652 S.W.2d 10 (1983); *In re Eliasen's Estate, supra; Sherman v. Robinson,* 319 Md. 445, 573 A.2d 34 (1990); *Jones v. All Am. Life Ins. Co.,* 312 N.C. 725, 325 S.E.2d 237 (1985); *Bernstein v. Rosenthal,* 671 P.2d 979 (Colo.App.1983) (by statute); *State Mut. Life Assurance Co. of Am. v. Hampton, supra.* A preponderance, of course, is our traditional burden of proof in a civil case. *See Hovermale v. Berkeley Springs Moose Lodge No. 1483,* 165 W.Va. 689, 271 S.E.2d 335 (1980); *Lester v. Flanagan,* 145 W.Va. 166, 113 S.E.2d 87 (1960); *Burk v. Huntington Dev. & Gas Co.,* 133 W.Va. 817, 58 S.E.2d 574 (1950).

For the foregoing reasons, we find the trial court erred in granting the motion to dismiss as to this cause of action.

### III.

■ The plaintiffs amended their complaint in October, 1989, by adding another cause of action seeking to remove the defendant as representative of their son's es-

---

**8.** Several jurisdictions hold that a "conviction" statute does supersede the common law, and the slayer is only barred under such a provision if he is criminally convicted. *See Strickland v. Wysowatcky,* 128 Colo. 221, 250 P.2d 199 (1952); *Life Ins. Co. of N. Am. v. Wollett,* 104 Nev. 687, 766 P.2d 893 (1988).

**9.** Because their son had no children and had no valid will, the plaintiffs would, if the defendant

is foreclosed from inheriting, be the beneficiaries of their son's estate under our statutes of descent and distribution. *See* W.Va.Code, 42–1–1 (1957); 42–2–1 (1923). The insurance carrier does not contest the fact that either the plaintiffs or the defendant is entitled to the proceeds. It has paid the money into court and has been dismissed from the case.

tate. This amendment was based on the premise that the wife, as the administratrix, was the sole person who could bring a wrongful death action under W.Va.Code, 55–7–6 (1985). *See Adams v. Grogg,* 153 W.Va. 55, 166 S.E.2d 755 (1969), *overruled on other grounds, Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721 (1976); *Perry v. New River & Pocahontas Consol. Coal Co.,* 74 W.Va. 122, 81 S.E. 844 (1914). Because she allegedly killed or conspired to kill her husband, there was an obvious conflict of interest. The plaintiffs sought to have another person appointed to bring the wrongful death action. The administratrix countered that such a challenge, under *Linger,* had to be made at the county commission level where the appointment had occurred. The circuit court agreed with the defendant and dismissed the amended complaint.

We have been sensitive to problems that may occur between the beneficiaries of a wrongful death suit and the personal representative. In *Trail v. Hawley,* 163 W.Va. 626, 259 S.E.2d 423 (1979), the beneficiaries claimed that the executrix had hired an incompetent attorney to pursue a wrongful death claim which arose in West Virginia. The attorney resided in Ohio and was the nephew of the executrix of the decedent's estate. A declaratory judgment suit was filed on the theory that the executrix was violating her fiduciary duties as a personal representative. The case was dismissed as failing to state a cause of action, and we reversed, holding in the Syllabus:

> "Heirs, who will be the ultimate beneficiaries of a wrongful death award, may bring a declaratory judgment action against the personal representative of the decedent's estate to determine if the representative is acting in consonance with his or her fiduciary duty to the heirs when a real controversy over matters relating to the prosecution of a wrongful death action exists."

Here, the problem is even more egregious if we accept as true, as we must on a motion to dismiss, the allegations that the administratrix caused the death of her husband. "When a court is considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff, and its allegations should be considered as true." *McGinnis v. Cayton,* 173 W.Va. 102, 104, 312 S.E.2d 765, 768 (1984). (Citations omitted). *See also Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987); *Warner v. Kittle,* 167 W.Va. 719, 280 S.E.2d 276 (1981); *John W. Lodge Distrib. Co. v. Texaco, Inc.,* 161 W.Va. 603, 245 S.E.2d 157 (1978).

■ In *Trail,* we recognized that under W.Va.Code, 55–7–6, our wrongful death statute, the personal representative has a fiduciary obligation to the beneficiaries of the deceased because the personal representative is merely a nominal party and any recovery passes to the beneficiaries designated in the wrongful death statute and not to the decedent's estate. *See Dunsmore v. Hartman,* 140 W.Va. 357, 84 S.E.2d 137 (1954); *Peters v. Kanawha Banking & Trust Co.,* 118 W.Va. 484, 191 S.E. 581 (1937).

■ *Linger* and its progeny protect a personal representative who is properly qualified from collateral attacks on whether there was a proper qualification. However, where a personal representative has been shown to have acted in violation of his or her fiduciary duties, he or she may be removed for cause. We authorized such removal by the circuit court in Syllabus Point 4 of *Welsh v. Welsh,* 136 W.Va. 914, 69 S.E.2d 34 (1952):

> "Where it appears that a domiciliary personal representative fails or refuses to perform his clear duty of attempting to recover possession of personal property without the jurisdiction of the state wherein he was appointed, the property being claimed by a resident of the state wherein the property is located, the personal representative should be removed from office and another person appointed in his stead by the court having supervision over the administration of the estate."

*See also Tramel v. Stafford,* 75 W.Va. 98, 83 S.E. 299 (1914).

Other jurisdictions have held that a wrongful death personal representative

may be replaced or substituted if there is shown to be a violation of the fiduciary duties owed to the beneficiaries. The Kentucky courts have most frequently considered this question. In both *Wheeler v. Hartford Accident & Indemnity Trust Co.*, 560 S.W.2d 816 (Ky.1978), and *Harris v. Rex Coal Co.*, 177 Ky. 630, 197 S.W. 1075 (1917), the personal representative refused to bring the wrongful death action, and the court held that a beneficiary under the wrongful death statute could do so. *See also Vaughn's Adm'r v. Louisville & N.R. Co.*, 297 Ky. 309, 179 S.W.2d 441 (1944).

In *Leach v. Owensboro City Ry. Co.*, 137 Ky. 292, 125 S.W. 708 (1910), the personal representative had, in collusion with the adverse party, fraudulently settled the wrongful death claim to deprive the beneficiaries of their rights, and the court held:

"Unless there was a compromise of the claim in this case in good faith, then there was not a settlement of it at all. If the administrator, in fraud of the rights of the beneficiaries of the estate of which he had charge, and in collusion with the adverse party, settled the claim against the railway company so as to defeat the action of the real beneficiaries, it may be opened up at the instance of the latter, and the original case tried on its merits."
137 Ky. at 295–96, 125 S.W. at 710.

*See also Cudney v. United Power & Light Corp.*, 142 Kan. 613, 51 P.2d 28 (1935); *Bailes v. Southern Ry, Co.*, 227 S.C. 176, 87 S.E.2d 481 (1955). *See generally* Annot., 101 A.L.R. 840 (1936).[10] Consequent-

ly, we conclude that upon a proper factual showing by the plaintiffs of the defendant's involvement in her husband's death, the circuit court would be authorized to remove her and direct the appointment of a new person to act as the personal representative.

## IV.

We find that the trial court erred in granting the motion to dismiss the plaintiffs' claim under our slayer statute, W.Va. Code, 42–4–2, and the common law incident thereto. Moreover, it was also error to dismiss their claim for appointment of a replacement fiduciary to bring a wrongful death claim. We recognize that the bare allegations of the complaint are not sufficient to mandate the immediate removal of the administratrix. The plaintiffs must prove the critical facts surrounding the wife's involvement in the claimed unlawful and intentional killing. We hold only that the plaintiffs are entitled an opportunity to do so.

The judgment of the Circuit Court of Nicholas County is, therefore, · reversed, and the case is remanded.

Reversed and remanded.

---

**10.** Several states in their wrongful death statutes enable an action to be brought by the beneficiaries as a coordinate right. *See* S. Speis- er, *Recovery for Wrongful Death* § 11.29 at 226–29 (2d ed. 1975).