613 S.E.2d 102

**Ronald L. PLUMLEY, Plaintiff Below, Appellee,**

**v.**

**Lynette Y. BLEDSOE, individually, and as Executrix of the Estate of Margaret Holiday Plumley, Defendant Below, Appellant.**

No. 31764.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 2005.

Decided March 17, 2005.

Paul W. Roop, II, Esq., Beckley, for Appellee.

Karen E. Acord, Esq., Beckley, for Appellant.

STARCHER, Justice.

In the instant case, we affirm a circuit court's application of West Virginia's "slayer rule."

## I.

### *Facts & Background*

Lynette Bledsoe, the appellant in the instant case, is the daughter and heir of the late Larry Plumley. Larry Plumley died by a self-inflicted gunshot wound on or about March 26, 2002. Approximately a week before taking his own life, on March 19, 2002, Larry Plumley intentionally and unlawfully shot and killed his mother, Margaret Plumley.[1]

Margaret Plumley had two sons: the aforesaid Larry Plumley, and Ronald Plumley, who is the appellee in the instant case.

On August 3, 2001, Margaret Plumley made a will giving specific bequests to her two grandchildren, who are: (1) the appellant Lynette Bledsoe (who as noted is the daughter of the late Larry Plumley and who is also the executor of Margaret Plumley's estate); and (2) Mitchell Plumley, the child of Ronald Plumley.

Margaret Plumley's will left the remainder of her estate[2] to her sons, Larry Plumley and Ronald Plumley, to be divided equally. However, her will stated clearly that if Larry or Ronald died *before* Margaret Plumley died, "my surviving son shall take the entirety of my residual estate."

The instant case arose as a declaratory judgment action in the circuit court to determine who is entitled to the residual estate of Margaret Plumley.

Lynette Bledsoe's claim before the circuit court and this Court is primarily based on the fact that Lynette's father Larry did not predecease his mother. Lynette argues that therefore the anti-lapse statute *(W.Va.Code,*

---

1. These facts and this conclusion were established and found by the circuit court in a bench trial using the preponderance of the evidence standard in the instant case. The appellant asserts that there was not a sufficient evidentiary basis for these findings. We have reviewed the record and find that contention by the appellant to be meritless.

2. Margaret Plumley's will named Larry Plumley as her first choice for executor, and Lynette Bledsoe as second choice. The record suggests that Margaret's residual estate includes a valuable piece of real estate and about $25,000.00 in cash.

41–3–3 [1923] ) applies—so that upon Margaret Plumley's death, Lynette Bledsoe, as Larry Plumley's heir, steps into Larry Plumley's shoes as heir to half of Margaret's residual estate.[3]

Taking the contrary position, Ronald Plumley argued successfully to the circuit court (and argues to this Court), that Lynette Bledsoe's claim is barred by the "slayer rule" principles embodied in *W.Va.Code*, 42–4–2 [1931], which states:

> No person who has been convicted of feloniously killing another, or of conspiracy in the killing of another, shall take or acquire any money or property, real or personal, or interest therein, from the one killed or conspired against, either by descent and distribution, or by will, or by any policy or certificate of insurance, or otherwise; but the money or the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same *if the person so convicted had been dead at the date of the death of the one killed or conspired against,* unless by some rule of law or equity the money or the property would pass to some other person or persons. [emphasis added].

Ronald Plumley argues that the "slayer rule" expressed in this statute gives rise to a legal presumption that Larry Plumley predeceased his mother. If the death of Larry Plumley is treated as having occurred before his mother's death, then applying this presumption—Ronald Plumley further argues—the clear language of Margaret Plumley's will awards all of her residual estate to Ronald Plumley—and none to Lynette Bledsoe.

As noted, the circuit court agreed with Ronald Plumley's argument, and awarded Margaret's entire residual estate to Ronald

Plumley, from which decision Lynette Bledsoe appeals.

## II.

### Standard of Review

The decision of the lower court was principally premised on the application of principles of law to undisputed facts, a decision that this Court reviews *de novo.* However, as further discussed *infra,* the circuit court does have a degree of equitable discretion in applying these principles of law; we review the court's action in this regard under an abuse of discretion standard.

## III.

### Discussion

■ The first issue that we must address is whether the remedy of the "predecease presumption" that is explicitly set forth in *W.Va.Code*, 42–4–2 [1931] can be applied to Larry Plumley in the instant case—inasmuch as Larry Plumley was never "convicted" of feloniously slaying his mother. The statute, by its own terms, applies only to persons who are convicted.

However, it is settled law that the "slayer rule" is a common-law principle in West Virginia, and that *W.Va.Code*, 42–4–2 [1931] is a codification of the rule that is designed to authorize the application of the slayer rule "automatically" in the instance of a felonious conviction—but not to otherwise limit the application of the common-law rule.

■ Syllabus Point 2 of *McClure v. McClure,* 184 W.Va. 649, 403 S.E.2d 197 (1991) states that

> W.Va.Code, 42–4–2, is designed to permit proof of a judgment of conviction for felonious killing to bar the slayer from obtaining property or life insurance pro-

---

**3.** *W. Va.Code,* 41–3–3 [1923] states:

> If a devisee or legatee die before the testator, or be dead at the time of making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof be made or required by the will. And if the devise or bequest be made to two or more persons jointly,

> and one or more of them die without issue, or be dead at the time of the making of the will, the part of the estate so devised or bequeathed to him or them shall not go to the other joint devisees or legatees, but shall, in the case of a devise, descend and pass to the heirs at law, and, in the case of a bequest, go and pass to the personal representative, of the testator, as if he had died intestate, unless the will otherwise provides.

ceeds from the person killed. Where there is no such conviction, then evidence of an unlawful and intentional killing must be shown in a civil action.

Syllabus Points 1 and 3, *Metropolitan Life Ins. Co. v. Hill*, 115 W.Va. 515, 177 S.E. 188 (1934), state:

> 1. Unlawful intentional causation of the death of an insured by the beneficiary named in the insurance policy, whether felonious or not, is the test of the common law rule barring the beneficiary from the proceeds of the policy.
>
> 3. Code 1931, 42–4–2, makes conviction of a felony conclusive against a beneficiary who kills the insured, but does not otherwise change the common law rule.

*Metropolitan Life* and *McClure* did not directly discuss whether the slayer rule's remedy—the "predecease presumption" that is set forth in *W.Va.Code*, 42–4–2 [1931]—is equally applicable when an unlawful and intentional killing is proved in a civil action (as opposed to by showing a felonious conviction).

But there seems to be no reason why different remedies should be applicable in the two instances. Why should a "predecease presumption" apply when there has been a conviction, but not apply when a slayer's suicide precludes any criminal charge?

Our research indicates that in an overwhelming majority of (possibly all) states, the remedies under common-law and statutory slayer rules are the same.[4] And this was the approach taken in *John Alden Life Insurance Company v. Doe*, 658 F.Supp. 638 (S.D.W.Va.1987) (applying West Virginia law and utilizing the "predecease presumption" in a case where there was not a conviction).

■ Based on this reasoning, we hold that the remedy of a "predecease presumption" that is set forth in *W.Va.Code*, 42–4–2 [1931] is also applicable in cases applying West Virginia's common-law "slayer rule." Applying this holding to the facts of the instant case, because Larry Plumley unlawfully and intentionally killed his mother Margaret

---

4. According to Jeffrey Sherman, writing in "Mercy Killing and the Right to Inherit," 61 U.Cin.L.Rev. 803, 805 ns. 11 & 12 (1993), in 1993 forty-four states had "slayer statutes" of one sort or another; and the other states had a common-law rule limiting a slayer's right to inherit or receive insurance proceeds. Most slayer statutes, like West Virginia's, apply only to intentional and felonious homicides. *Id.* at 848. Sherman says that it is generally erroneous to assume that the slayer statute is the sole source of law on the point—that is, to act as if the statute entirely supplants the common law. *Id.*

[M]any courts faced with slayer statutes referring expressly to conviction have interpreted those statutes as supplementing rather than superseding the common law slayer rule and have accordingly barred even unconvicted slayers from inheriting.

*Id.* at 854. Professor Sherman also notes that "[i]t is generally agreed that the simplest and perhaps most often-applied solution is to distribute the property as if the slayer had predeceased the victim." *Id.* at 851.

Suppose the testator's will devises "my entire estate to A, but if A should predecease me, then to B." Suppose further that A murders the testator and is therefore barred by the slayer rule from inheriting. Will the alternate taker in the will (B) be entitled to take, or will the property pass by intestacy to the testator's heirs? Most courts would give the estate to B, unless there is clear evidence that the testator would have preferred a different result.... [A] fundamental in-

quiry [in applying the predecease presumption as a remedy] should be the determination of the testator's intent.

*Id.* at 852–853. Sherman argues that in such instances as assisted suicide, equitable considerations contravene the operation of the "predecease presumption" remedy, and allow the slayer to nevertheless inherit.

*See also* Anthony Martin Singer, "Refusing to Visit the Sins of the Father upon the Daughter," 37 Washburn Law Journal 229, 230, n. 4 (1997). Mr. Singer's article states that the "predecease presumption" remedy derives from a 1936 model statute proposed by Harvard Professor John W. Wade, "Acquisition of Property by Wrongfully Killing Another—A Statutory Solution," 49 Harv. L.Rev. 715, 716 n. 7 (1936). For a discussion of some of the equitable concerns that arise in the application of slayer rules, *see* Mary Louise Fellows, "The Slayer Rule: Not Solely a Matter of Equity," 71 Iowa L.Rev. 489 (1986). *Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188 (N.Y.1889) is recognized as a leading case establishing the "slayer rule." Legal theorists have cited the *Riggs* case as a classic example of the law's "use of norms drawn from the universe of social principles and moral values...." Frederick Schnauer, "The Limited Domain of the Law," 90 Va.L.Rev.1909, 1920 (2004). Professor Schnauer notes that diverse equitable circumstances and considerations have led many courts to moderate the *Riggs* "slayer rule"—including the protection of the interests of innocent heirs of slayers. *Id.* at 1937, *passim*.

Plumley, the presumption arises under the common-law slayer rule that Larry Plumley predeceased his mother Margaret.

 However, the "arising" of the predecease presumption is not the end of the story. *W.Va.Code,* 42–4–2 [1931] specifically provides that the results of applying the predecease presumption under the slayer rule may be negated or modified (*i.e.,* the presumption may be rebutted) if " by some rule of law or equity the money or the property would pass to some other person or persons." *Id.*[5] In keeping with the foregoing-discussed principle of uniform application of slayer rule principles, we also hold that West Virginia's common-law "slayer rule" incorporates the equitable and "rule of law" exceptions to the "predecease presumption" that is set forth in *W.Va.Code,* 42–4–2 [1931].

Applying this holding to the instant case, we do not perceive that any equitable principles or other rule of law operates to negate or modify the application of the predecease presumption in the instant case.

Margaret Plumley's will shows that Margaret was quite prepared to have her granddaughter Lynette Bledsoe receive only a $3,000.00 specific bequest—in the not inconceivable event that Lynette's father Larry Plumley died before Margaret died. No expectations, reliance, understandings, or other facts or circumstances relating to Lynette Bledsoe and her grandmother or father are presented by the record before us from which this Court can conclude that a severe inequity is being done to Lynette Bledsoe by applying the presumption.

It is true that no evidence shows that Lynette Bledsoe was anything other than innocent in her relationship with her grandmother. It is also true that the operation of the predecease presumption does, in one sense, "visit the sins of the father on the child" in the instant case. But the ultimate effect of this visitation is not demonstrably contrary to the wishes of the testator; and that consideration should be an important factor, *see* discussion at note 4 *supra.*

### IV.

### *Conclusion*

For the foregoing reasons, we affirm the order of the circuit court awarding the residual estate of Margaret Plumley to the appellee.

Affirmed.

---

5. The sources discussed at note 4 *supra* discuss at length how this mitigating principle is designed to assure that the slayer rule is not applied harshly or inequitably, or contrary to other legal rules.