569 S.E.2d 431

**Viola Brown LAUDERDALE, Plaintiff Below, Appellant,**

v.

**Michael Dean NEAL, Robert Parks, Administrator of the Estate of Michael Wayne Brown, and State Farm Mutual Automobile Insurance Company, Defendants Below, Appellees.**

No. 29963.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 2002.

Decided April 25, 2002.

Paul M. Stroebel, Stroebel & Johnson, P.L.L.C., Charleston, for the Appellant.

Lonnie C. Simmons, Fragale & Simmons, Charleston, for the Appellee, Robert Parks, Administrator.

Herschel H. Rose, III, Rose & Atkinson, Charleston, for the Appellee, State Farm Mutual Automobile Insurance Company.

PER CURIAM.

Viola Brown Lauderdale (hereinafter "Appellant") appeals from a January 2, 2001, order of the Circuit Court of Kanawha County, under which she was declared entitled to just $100 from the proceeds of a $100,000 settlement previously disbursed to family members other than herself as a result of a summary proceeding seeking review of a compromise of a wrongful death claim arising out of the death of her husband, Michael Wayne Brown (hereinafter "Decedent"). Appellant contends that the lower court erred by making such a nominal award to a surviving spouse, failing to designate the party responsible for payment of the award, and failing to set aside or amend the March 3, 1994, summary proceeding order which approved the original settlement but failed to set out the specific share of the settlement proceeds due each person entitled to a part of the settlement. Upon review of the record, briefs and argument in this case, we remand this case to the circuit court to determine the share of the settlement fairly due to Appellant.

## I. Facts and Procedural History

On July 21, 1993, Decedent was struck and killed by an automobile driven by Michael Dean Neal (hereinafter "Mr. Neal") and insured by the Appellee State Farm Mutual Automobile Insurance Company (hereinafter "State Farm").[1] Decedent had married Appellant on May 11, 1993, while he was incarcerated in a work release center in Charleston.[2] Decedent moved into Appellant's residence after his incarceration ended June 6, 1993, and was residing with Appellant at the time of his death.[3]

On August 27, 1993, Decedent's uncle, Robert Parks (hereinafter "Mr. Parks"), was appointed administrator of the estate, allegedly without the knowledge of Appellant. Mr. Parks subsequently initiated a wrongful death claim on behalf of the estate against the owner of the automobile, Mr. Neal, and State Farm. In response, State Farm offered to pay the administrator, Mr. Parks, $100,000 to settle the wrongful death action—the maximum amount payable under Mr. Neal's insurance policy. On March 3, 1994, a hearing was held in the summary proceeding initiated in the circuit court to obtain court approval of the settlement proposed by State Farm and Mr. Parks. Although Mr. Parks did not attend the summary hearing,[4] his counsel tendered to the circuit court a release, dated February 17, 1994, and signed by Mr. Parks, expressly declaring that he had the consent of all beneficiaries entitled to share in the proceeds of the proposed settlement. While no transcript of the March 3, 1994, hearing exists, the record includes a letter authored by Judge Paul Zakaib which indicates that some of Decedent's family, other than Appellant, did participate in the summary hearing. By order entered March 3, 1994, the circuit court approved the $100,000 settlement, allowed the administrator's counsel a fee of $40,000 and "directed" the administrator "to

---

1. Mr. Neal was a defendant below, but is not an appellee herein.

2. Decedent had no children at the time of his death.

3. According to Appellant, between the time of their marriage and his release from incarceration, Decedent would visit with her at an apartment that they apparently rented together, before returning to the work release center for the night.

4. The order entered as a result of the March 3, 1994, hearing reflects that Mr. Parks attended the hearing, but Mr. Parks later testified during his deposition that he did not attend this hearing.

distribute the settlment [sic] amount to the surviving relatives" of Decedent, "as dictated by the provisions of West Virginia Code § 55–7–6." The order did not apportion the settlement among the relatives or specify them by name.[5]

Appellant received neither notice of the summary proceeding nor any part of the settlement proceeds. When Appellant discovered that settlement had occurred, she attempted to protect her right to a share of the settlement by filing a complaint on December 23, 1994, against Mr. Neal, State Farm, and Mr. Parks, requesting that the circuit court set aside the settlement order from the summary proceeding and reopen the wrongful death action. Appellant also requested that the previously-disbursed settlement funds be returned to an escrow account pending the outcome of the new action. The case was assigned to Judge Paul Zakaib, who had also presided over the summary proceeding. Mr. Neal, State Farm, and Mr. Parks filed motions to dismiss the complaint, and Appellant filed her response to said motions. The lower court denied the motions to dismiss Appellant's action by order entered February 23, 1996.

Thereafter, Appellant filed numerous motions in what appeared to be attempts to have the circuit court take action on her case. Additionally, Appellant filed a motion on September 18, 1996, seeking recusal of Judge Zakaib, asserting that the judge might be called as a witness because he had presided over the wrongful death summary proceeding in which the settlement had been approved. As a result, the case was reassigned to Judge Andrew MacQueen on June 19, 1997. Although Appellant filed several motions requesting that the court rule on the issue of setting aside the settlement order, no significant court action occurred in the matter until April 21, 1999, when the lower court entered a memorandum order. In that order, the court deferred its ruling on Appellant's motions to set aside the settlement order in the summary proceeding until a hearing could be held concerning the interests of all statutory beneficiaries and the duties a settling insurer would owe to such beneficiaries.

On July 15, 1999, Mr. Parks' counsel filed a supplement to the record below, indicating that he had attempted by certified letters to notify the settlement beneficiaries and Mr. Parks of the upcoming hearing. As a result, Mr. Parks' counsel discovered that one beneficiary was deceased and another incarcerated. The letter to a third beneficiary was returned as undeliverable. The supplement also included an affidavit of Mr. Parks, a resident of Georgia, stating that Mr. Parks is disabled and receiving social security disability benefits as his only income. Consequently, Appellant was the only statutory beneficiary to appear and present evidence at the hearing held on July 21, 1999, for the purpose of reconsidering the proper distribution of the settlement proceeds. By order entered December 27, 2000, the circuit court awarded Appellant $100 of the previously disbursed settlement proceeds. It is from this order that Appellant now appeals.

## II. Standard of Review

■ This Court set forth the standard for reviewing the findings and conclusions of a circuit court in syllabus point two of *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997), as follows:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

## III. Discussion

Our wrongful death statute requires that a wrongful death action shall be brought by the decedent's personal representative and, as noted earlier, that the proceeds of any recovery are to be distributed to relatives and other individuals who are financially de-

---

5. The relatives identified as entitled to recover under the wrongful death statute are the surviving children and spouse of the decedent, stepchil- dren, brothers, sisters and parents. W. Va.Code § 55–7–6(b) (1992) (Repl.Vol.2000).

pendent upon the decedent.[6] In cases tried to verdict, the statute further provides that the jury or the court may direct in what proportions the damages shall be distributed to the various person entitled to share in the recovery. *See* W. Va.Code § 55–7–6(b). Alternatively, West Virginia Code § 55–7–7 (1989) (Repl.Vol.2000),[7] provides that a personal representative may compromise the wrongful death claim, but requires that any such compromise be approved by the court.[8] This statute further provides that, "[u]pon approval of the compromise, the court shall apportion and distribute such damages, or the compromise agreed upon, after making provisions" for funeral expenses and other specified expenditures not at issue in this case. W.Va.Code § 55–7–7.

■ In the summary proceeding at which the $100,000 wrongful death settlement was approved, the circuit court elected to accept the representation in the release signed by the administrator, Mr. Parks, that *all* of the lawful beneficiaries were in agreement regarding the distribution of the settlement proceeds and the trial court did not specify any allocation of the shares of that settlement to which the various persons were entitled in the order approving the settlement. In fact, the administrator had not reached an agreement with *all* of the beneficiaries entitled to share in the settlement, and, specifically, had not obtained consent from Appellant to the proposed distribution.

■ Consequently, there is no release of Appellant's claim to a share of the settlement and she has now made claim upon the person responsible for the distribution of the settlement. The individual ultimately responsible for distributing the money is Mr. Parks, the administrator of the estate. In syllabus point four of *McClure v. McClure*, 184 W.Va. 649, 403 S.E.2d 197 (1991), we recognized the fiduciary duty of a personal representative in such cases:

> Under W.Va.Code, 55–7–6 (1985), our wrongful death statute, the personal representative has a fiduciary obligation to the beneficiaries of the deceased because the personal representative is merely a nominal party and any recovery passes to the beneficiaries designated in the wrongful death statute and not to the decedent's estate.

This Court further noted in *McClure*, "[w]e have been sensitive to problems that may occur between the beneficiaries of a wrongful death suit and the personal representative." 184 W.Va. at 654, 403 S.E.2d at 202. Additionally, we stated in *McClure* that upon a showing that a personal representative has violated his fiduciary duties, he may be discharged from his position and replaced by another representative. *Id.* at 655, 403 S.E.2d at 203; *see also* Syl. Pt. 4, *Welsh v. Welsh*, 136 W.Va. 914, 69 S.E.2d 34 (1952). Lastly, we note that although Mr. Parks comes to this Court representing that he is virtually without funds, he qualified for his position as administrator by taking the re-

---

**6.** *See* W.Va.Code § 55–7–5 (1931) (Repl.Vol. 2000); W.Va.Code § 55–7–6.

**7.** The full text of West Virginia Code § 55–7–7 reads as follows:

> The personal representative of the deceased may compromise any claim to damages arising under section five [§ 55–7–5] of this article before or after action brought. What is received by the personal representative under the compromise shall be treated as if recovered by him in an action under the section last mentioned. When the judge acts in vacation, he shall return all the papers in the case, and orders made therein, to the clerk's office of such court. The clerk shall file the papers in his office as soon as received, and forthwith enter the order in the order book on the law side of the court. Such orders, and all the proceedings in vacation, shall have the same force and effect as if made or had in term.

> Upon approval of the compromise, the court shall apportion and distribute such damages, or the compromise agreed upon, after making provisions for those expenditures, if any, specified in subdivision (2), subsection (c), section six [§ 55–7–6(c)(2)] of this article, in the same manner as in the cases tried without a jury.

**8.** Our discussion today does not effect or imply any change in the law announced in *Jordan v. Allstate Insurance Co.*, 184 W.Va. 678, 403 S.E.2d 421 (1991), wherein, *inter alia*, we acknowledged that a consummated settlement agreement of a wrongful death claim was binding upon adult beneficiaries notwithstanding the absence of court approval of the consummated settlement, where those adult beneficiaries had, in fact, knowingly signed a release of their interests in such a claim.

quired oath and giving a $20,000 bond, with a surety, conditioned that "he will faithfully perform the duties of his office to the best of his judgment." W. Va.Code § 44–1–6 (1923) (Repl.Vol.1997). Clearly, Appellant's claim for a proper share of the proceeds of the settlement of the wrongful death action lies against the administrator and his surety.[9]

In its order entered on January 2, 2001, the circuit court determined in the instant action that Appellant was entitled only to a $100 award from the settlement. We have carefully reviewed that order and the transcript of the July 21, 1999, hearing on which it is based. We are unable to discern from the order or the transcript any findings of fact or conclusions of law (other than the ultimate determination of Appellant's entitlement to $100) that would enable us to give a meaningful review to the decision of the lower court fixing that award as a "fair and just" share of the settlement recovered or to determine whether the circuit court abused its discretion in fixing such award. The best this Court can surmise is that the size of the award may have been based in part upon the belief of the lower court that there was no money left to be distributed. Insofar as such a perception may have played a part in the lower court's ruling, we also find no reference to or examination of the possibility that a $20,000 surety bond remains available to the court at the present time to satisfy Mr. Parks' fiduciary duty to Appellant.

In light of the overall record, briefs and argument in this appeal, we remand this case to the circuit court for a full hearing on the record to determine the amount of monetary damages fairly due to Appellant, arising from the wrongful death of her husband and the failure of the administrator to perform his fiduciary duty with respect to Appellant and the apportionment of settlement proceeds. We recognize that some of the beneficiaries may not be subject to the jurisdiction of, or

may be otherwise unavailable to the lower court, or may be otherwise unavailable. However, a reasonable effort should be made to serve all interested parties with notice of such hearing, by any means proper for the service of notice, including publication if necessary. Among the parties entitled to notice are the administrator and his surety. All such parties are entitled to participate if present.

Upon determining what sum, if any, is due Appellant, together with interest and costs, if any, the lower court shall allow as a credit against such sum the amount of $20,000, representing the aggregate amount which this Court has been advised the Appellant has been paid to settle and release claims she asserted against other parties, including the alleged tortfeasor and his insurer, as a result of the facts and circumstances set forth in this opinion.[10]

The presence at the hearing of the administrator, in person or by counsel, and the personal presence of the administrator's counsel, are necessary in part by reason of the fact that counsel for the administrator acknowledged during oral argument that the surety on the administrator's bond was, at the time the bond was given, an employee of the law firm that represented the administrator in the wrongful death summary proceeding approving the settlement. Our statutory law expressly prohibits a lawyer from acting as surety:

[A]n attorney-at-law, shall not be taken as surety in any bond required to be given by any fiduciary. When, for any reason, the provisions of this section are violated in the taking of any bond, the bond so given shall not be void, but upon the discovery of such fact a new bond shall be required of the fiduciary.

W.Va.Code § 44–5–4 (1982) (Repl.Vol.1997). At the hearing required by this opinion, the circuit court shall determine whether the

9. See also Stone v. CSX Transportation, Inc., 10 F.Supp.2d 602 (S.D.W.Va.1998), wherein the trial court (Chambers, J.) characterized the failure of a West Virginia personal representative to see to the proper distribution of settlement proceeds in a wrongful death claim when the consent of adult beneficiaries has not been obtained as per se negligence.

10. Those releases also likely extinguish any claim Appellant might have against the alleged tortfeasor or his insurer, arising by reason of any insolvency of the administrator or the decedent's estate. See Syl. Pt. 2, Jordan v. Allstate Ins. Co., 184 W.Va. 678, 678, 403 S.E.2d 421, 421.

surety on the administrator's bond was taken in the course of her employment by the law firm. Alternatively, counsel for the administrator may prove that the surety acted independently, pursuant to reasons other than her employment by the firm. If it is determined that the surety acted in the course of her employment by administrator's counsel or his law firm, then a new and lawful bond shall be required at the expense of the administrator or the administrator's counsel, or the law firm or any successor law firms, which bond shall be held to be applied to any sums ordered to be paid by the administrator as a result of the hearing, unless (1) the circuit court further finds that sufficient personal assets of the administrator or assets of the decedent's estate are available; or (2) the matter is sooner resolved by settlement.

Accordingly, we hereby vacate the December 27, 2000, order of the Circuit Court of Kanawha County through which Appellant was awarded $100, and remand this cause for further proceedings consistent with this opinion.

Reversed and Remanded.